**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MERCEDES BENZ USA LLC,
Plaintiff,

v.

JEFF SOTO AND MAXX GRAMAJO,

Defendants.

2:19-CV-10949-AC-EAS
Honorable Avern Cohn
District Court Judge

Honorable Elizabeth A. Stafford
Magistrate Judge

**DEFENDANTS'**
**MOTION TO DISMISS**
**UNDER FRCP 12(b)(1) and (6)**

"LOCAL RULE CERTIFICATION: I, Norman Lippitt, certify that this document complies with Local Rule 5. l(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7. l(d)(3)."

---

PLEASE TAKE NOTICE that, by their attorneys listed below, Defendants Jeff Soto and Maxx Gramajo move this Court for an Order pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) dismissing the declaratory judgment complaint filed by Plaintiff Mercedes Benz USA, LLC, a Delaware limited liability company ("MBZ"), for lack of personal jurisdiction and failure to state a claim upon which relief may be granted (the "Motion"). This Motion is based on (i) the supporting memorandum of law, (ii) the declaration of Jeff Soto

("Soto"), (iii) the declaration of Maxx Gramajo ("Maxx242"), (iv) the declaration of Jeffrey Gluck, and (v) oral argument in support of this Motion.

As required by E.D. Mich. Local Rule 7.1(a), counsel for Soto and Maxx242 (Soto and Maxx242 collectively referred to as the "Artists") sought concurrence from MBZ's counsel, holding a teleconference with counsel and presenting the nature of this Motion and its legal basis. The Artists' counsel requested, but did not obtain, concurrence in the relief sought, i.e. dismissal of the Complaint.

Respectfully submitted,

DATED: April 24, 2019

By: /s/ Norman L. Lippitt

LIPPITT, O'KEEFE, GORNBEIN, PLLC
Norman L. Lippitt (P16716)
370 E. Maple Road, Third Floor
Birmingham, MI 48009
248-646-8292
nlippitt @lippittokeefe.com

GLUCK LAW FIRM P.C.
Jeffrey S. Gluck (admission application to be filed) 602 N. Sweetzer Avenue Los Angeles, California 90048
Telephone: 310.776.7413
jeff@gluckip.com

ERIKSON LAW GROUP
David Alden Erikson (admission application to be filed)
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
david@daviderikson.com

*Counsel for Defendants Jeff Soto and Maxx Gramajo*

## BRIEF IN SUPPORT OF MOTION

## CONCISE STATEMENT OF ISSUES PRESENTED

The Motion presents four issues:

1.      Should the Court dismiss the Complaint brought by MBZ, a Delaware limited liability company based in Georgia, for lack of personal jurisdiction pursuant to FRCP 12(b)(2) because the Defendants, California residents, have virtually no contacts with Michigan other than travelling there once as invited guests to participate in an art festival?

2.      Has MBZ stated claims for a declaratory judgment of non-infringement of copyright where the work in question has not been registered with the United States Copyright Office, a prerequisite for copyright litigation?

3.      Has MBZ stated a claim for a declaratory judgment of non-infringement based on the Architectural Works Copyright Protection Act ("AWCPA"), where MBZ has not alleged any of the following elements: that the work in question (a) is original, (b) is more than a functional combination of "standard features," (c) is a structure that humans occupy, (d) was built after 1990, or (e) is a protected "architectural work"?

4.      Does Section 120(a) of the AWCPA immunize infringement of a pictorial, graphical, or sculptural ("PGS") work that appears *on* an architectural work?

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

**I.    Lack of Personal Jurisdiction:**

- Fed. R. Civ. P. 12(b)(2)

- *Eggleston v. Daniels*, No. 15-11893, 2016 WL 4363013 (E.D. Mich. Aug. 16, 2016)

- *Ford Motor Co. v. Autel US Inc.*, No. 14-13760, 2015 WL 5729067 (E.D. Mich. Sept. 30, 2015)

- *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489 (6th Cir. 2008)

- *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 635 F. Supp. 2d 632 (E.D. Mich. 2008)

- *Others First, Inc. v. Better Bus. Bureau of E. Mo. and S. Ill.* No. 14-CV-12066, 2014 WL 6455662 (E.D. Mich. Nov. 17, 2014)

- *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762 (E.D. Mich. 2013)

**II.    Failure to State a Claim:**

- FRCP 12(b)(6)

- *Gaylord v. USPS*, 595 F.3d 1364 (Fed. Cir. 2010)

- *Leicester v. Warner Bros.*, 232 F.3d 1212 (9th Cir. 2000)

- *Polaroid Corp. v. Berkey Photo, Inc.*, 425 F. Supp. 605 (D. Del. 1976)

- *TreadmillDoctor.com, Inc. v. Johnson*, No. 08-2877, 2011 U.S. Dist. LEXIS 34652 (W.D. Tenn. Mar. 31, 2011)

**Statutes**

17 U.S.C. §101

17 U.S.C. §120(a)

28 U.S.C. §2201

**Regulations**

37 CFR 202.11

## TABLE OF CONTENTS

I. Introduction .......... 1

II. Background .......... 3

A. MBZ acknowledges that it used the artwork without permission—but asserts that street art is not protected by copyright. .......... 4

B. MBZ alleges no special relation to this District. .......... 5

C. The Artists have not registered a copyright in the Mural. .......... 6

III. The Court Lacks Personal Jurisdiction over the Artists .......... 6

A. Legal standard for a FRCP 12(b)(2) analysis. .......... 6

B. MBZ cannot establish general jurisdiction over the non-resident Artists. 7

C. The Court Lacks Specific Jurisdiction over the California-based Artists. 7

1. The Artists have not purposefully availed themselves of the privilege of acting in Michigan. .......... 8

2. MBZ's Declaratory Judgment claims do not arise out of the Artists' Michigan contacts. .......... 10

3. The exercise of jurisdiction over the Artists in Michigan would be unreasonable .......... 12

IV. MBZ's Complaint Fails to State Facts Sufficient to Support a Declaratory Judgment Claim .......... 13

A. MBZ fails to set out a justiciable claim for non-infringement because the Artists' Mural has not yet been registered. ..... 14

B. MBZ fails to state a claim for a declaratory judgment of non-liability based on the "architectural photography exception." ..... 15

1. MBZ fails to allege the existence of an architectural work. ..... 17

a. Like all works protected by copyright, an "architectural work" requires some measure of creativity. ..... 17

b. The AWCPA's definition of "architectural work" excludes non-creative design and "standard features." ..... 18

c. The definition of "architectural work" explicitly excludes many utilitarian structures. ..... 18

d. The AWCPA applies only to buildings constructed after 1990 ..... 20

e. MBZ fails to identify a building or allege that the building is an architectural work. ..... 20

2. Even if the building were an architectural work, Section 120(a) wouldn't immunize infringement of a PGS work simply because it appears thereon. ..... 21

a. Background of the AWCPA, and its architectural photography exception. ..... 21

       b. Section 120(a)'s exception limits only the copyrights in architectural works, and not PGS works. .................................... 23

c. The legislative history compels this interpretation. .................... 24

d. Accordingly, the AWCPA cannot provide MBZ with a defense. 24

V. Conclusion ........................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 13

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499 (6th Cir. 2014) .................... 11, 13

*Calderon v. Ashmus*,
523 U.S. 740, 749, 118 S.Ct. 1694 (1998) .................... 14

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) .................... 8, 9

*Davidson v. United States*,
2017 U.S. Claims LEXIS 841 .................... 23

*Eggleston v. Daniels*,
No. 15-11893, 2016 WL 4363013 (E.D. Mich. Aug. 16, 2016) .................... 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 .................... 17

*Ford Motor Co. v. Autel US Inc.*,
No. 14-13760, 2015 WL 5729067 (E.D. Mich. Sept. 30, 2015) .................... 6, 7

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*,
139 S. Ct. 881 (2019) .................... 14

*GenCorp, Inc. v. Olin Corp.*,
390 F.3d 433 (6th Cir. 2004) .................... 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .................... 7

*Inc. v. Imago Eyewear Pty, Ltd.*,
167 F. App'x 518 (6th Cir. 2006) .................... 10

*Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 946 F. Supp. 2d 714 (E.D. Mich. 2013) .................................................... 9

*Interna Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005) .................................................... 8

*Leicester v. Warner Bros.*, 232 F.3d 1212 (9th Cir. 2000) .................................................... 21

*Mazer v. Stein*, 347 U.S. 201 (1954) .................................................... 22

*Others First, Inc. v. Better Business Bureau of Eastern Missouri and Southern Illinois*, No. 14-CV-12066, 2014 WL 6455662 (E.D. Mich. Nov. 17, 2014) .................. 11

*Polaroid Corp. v. Berkey Photo, Inc.*, 425 F. Supp. 605 (D. Del. 1976) .................................................... 14

*Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212 (6th Cir. 1989) .................................................... 6

*SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762 (E.D. Mich. 2013) .................................................... 7

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968) .................................................... 8

*Specific Software Sols., LLC v. Inst. of WorkComp Advisors, LLC*, 615 F. Supp. 2d 708 (M.D. Tenn. 2009) .................................................... 15

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017).................. 22

*TreadmillDoctor.com, Inc. v. Johnson*, No. 08-2877, 2011 U.S. Dist. LEXIS 34652 (W.D. Tenn. Mar. 31, 2011)......... 15

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) .................................................... 8

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) .......... 9

*Youn v. Track, Inc.*,
324 F.3d 409 (6th Cir. 2003) .......... 12

**Statutes**

17 U.S.C. § 101 .......... 19
17 U.S.C. § 120(a) .......... 16

**Other Authorities**

H.R. Rep. 101-735 .......... 22

**Treatises**

1 NIMMER ON COPYRIGHT, § 2.20 .......... 22

**Regulations**

37 C.F.R. § 202.11 .......... 19

## I.   INTRODUCTION

As part of an annual art festival in downtown Detroit, the Artists were invited to paint a large-scale outdoor mural (the "Mural"). After MBZ inexplicably used the Mural as advertising—without permission or compensation—the Artists hired a lawyer to protest. MBZ responded by filing this lawsuit against the Artists.

The sole purpose of MBZ's action is to bully and intimidate the Artists—along with other street artists simultaneously sued by MBZ[1]— to send the message that assertions of infringement against the luxury automaker will be met with ferocious and financially ruinous litigation. MBZ's hope is that the Artists will be thankful for a walkaway settlement where they receive no compensation but are spared the burden and expense of defending this action.[2] MBZ further hopes that other street artists will be deterred from asserting their rights—allowing it to continue to heavily rely on street art in its advertising without having to pay artists.

Even worse than bullying individual street artists, MBZ advances arguments that (if accepted) would remove copyright protection for virtually all street art.

---

[1] Concurrently with the filing of this Complaint, MBZ sued two other artists who had complained that MBZ infringed their work, asserting identical declaratory judgment claims and seeking the same relief—the Court's imprimatur on MBZ's appropriation of the Artists' works for MBZ's advertising and commercial use. All three cases have been assigned to this Court. The artist defendants bring motions to dismiss all three cases.

[2] MBZ increases the intimidation by seeking attorneys' fees under 17 U.S.C. § 505. [Complaint, Prayer for Relief, ECF No. 1, at 17.]

Specifically, MBZ argues that under the 1990 Architectural Works Copyright Protection Act ("AWCPA"), any art appearing on the side of a "building" (i.e. all street art) may be freely appropriated and used for any purpose. This argument—as ludicrous as it is—would not only carry the day for MBZ in the three currently pending cases, but also in any future controversy involving MBZ's use of street art.

The sheer baselessness of MBZ's lawsuit shows that it was brought in bad faith for reasons other than obtaining a hearing on the merits. MBZ's lawyers must know that their entire lawsuit will be dismissed as a result of two insurmountable procedural defects: (a) the Artists, who live and work in Los Angeles, are not subject to personal jurisdiction in Michigan, where they have never set foot other than to paint the Mural, and (b) the Artists have yet to register a copyright in the Mural, which is a pre-requisite of copyright litigation.

In addition to these procedural grounds requiring dismissal, MBZ's AWCPA claim is based on a fundamental misunderstanding of the statute. In 1990, in order to allow the U.S. to become a signatory to the Berne Convention, Congress passed the AWCPA, applying copyright protection to "architectural works" for the first time. The legislation only *expanded* copyright protection. But not wanting to turn every tourist at Fisher Building into an infringer, legislators wisely limited this expansion of copyright protection by specifically allowing photography of architectural works (which Congress determined was consistent with Berne). In

other words, the legislation was not motivated by a desire to protect outdoor photography. Rather, it was legislation designed to protect architectural works to the extent required to comply with Berne. As established in Section IV(C) below, the AWCPA cannot be construed to allow appropriation of two dimensional artwork—such as street art—appearing on a building.

MBZ's claim for a judicial declaration of non-liability under the AWCPA also fails because MBZ did not make a serious effort to plead the requisite elements—again casting doubt on whether such claim was brought in good faith. The AWCPA applies to structures that are (a) original, (b) more than a functional combination of "standard features," (c) "occupied" by humans, and (d) built after 1990. MBZ pleads none of these elements, and alleges little more than that the Mural appears on a "building."

## II.   BACKGROUND

MBZ's complaint is straightforward. The company alleges that it used the Artists' work without permission, and that the Artists have threatened to bring an infringement action. MBZ then seeks five separate judicial declarations of non-liability. MBZ's second claim for a declaration of non-infringement under the doctrine of fair use, and its third claim for a declaration of non-infringement under the terms of 17 U.S.C. Section 120(a) of the AWCPA (which allows photography of architectural works) include some degree of substance. Those claims seek legal

findings that MBZ's infringement was justified or allowed by law. MBZ's other three claims are simply naked assertions of non-liability.[3]

By this motion, Artists ask the court to dismiss all claims on the grounds of lack of personal jurisdiction, and lack of ripeness; and to dismiss the AWCPA claim due to missing allegations and a fundamental misunderstanding of the statute.

**A. MBZ acknowledges that it used the artwork without permission—but asserts that street art is not protected by copyright.**

MBZ admits that it used the Artists' Mural without authorization. More specifically, MBZ affirmatively alleges that it took photographs of the Mural and then used those photographs for an advertising campaign introducing a new vehicle. *Id.*, ¶¶ 1, 4, 5.[4]

---

[3] In addition to the fair use and AWCPA exemption arguments, in its first, fourth and fifth claims MBZ seeks the Court's broad declaratory judgments that: MBZ's advertisements depicting the Artists' Mural did not infringe the Artists' copyright [Complaint, ¶ 55]; MBZ did not violate the prohibition under the Digital Millennium Copyright Act against falsifying or intentionally removing or altering copyright management information [*Id.* ¶ 71] and MBZ did not violate "any of [the Artists'] alleged rights." [*Id.*, ¶ 74.] All five of MBZ's declaratory judgment claims seek essentially the same thing: absolution from liability for MBZ's unauthorized commercial exploitation of the Artists' Mural.

[4] MBZ acknowledges only limited use of the Artists' Mural, stating that it used the Mural "in one of [MBZ's] Instagram posts about its G 500 Series truck." *Id.* MBZ vastly understates its infringement. The Artists have discovered that MBZ widely published and distributed (and continues to publish) infringing photos well beyond the single Instagram post MBZ identifies. [Gluck Decl., ¶ 2, Exh. A.]

MBZ acknowledges that the Artists created the Mural, and that MBZ did not have the Artists' permission or consent to use the Mural in MBZ's advertising. [Complaint, ¶¶ 4, 5, 11.] MBZ does not say why it failed to seek the Artists' approval or to acknowledge the Artists' intellectual property rights in MBZ's displays and publications of the Mural. MBZ appears to claim that any authorization from the Artists was unnecessary as "MBZ did not infringe [the Artists'] alleged copyright." [*Id.*, ¶ 8.]

MBZ unabashedly asserts its intent in bringing the Declaratory Judgment Complaint as "seeking to validate" MBZ's appropriation of the Artists' artwork. [Complaint, ¶ 1.] Towards that end, MBZ alleges that it seeks to "resolve" the Artists' infringement claims and "obtain declaratory judgments that, *inter alia*, the photograph and January 2018 advertisement depicting [the Artists'] mural constituted a fair use, and that [the Artists'] mural is exempt from protection under the Architectural Works Copyright Protection Act. [*Id.*, ¶ 9.]

**B. MBZ alleges no special relation to this District.**

After discovering MBZ's infringement of their Mural, the Artists' attorney contacted MBZ. As MBZ alleges: "...Defendants Jeff Soto and Maxx Gramajo, California street artists, threatened to file a copyright infringement lawsuit against MBUSA based on MBUSA's depiction of [the Artists'] mural ...." [Complaint, ¶ 6.] Although MBZ does not allege where or how this contact occurred, the

communications derived from the Artists' California-based attorney to MBZ's representatives in New York. [Declaration of Jeffrey Gluck ("Gluck Decl."), ¶ 4.] None of the contact from the Artists to MBZ occurred in Michigan or was directed to anyone in Michigan. *Id.* All such communications originated in California and were directed to MBZ, a non-Michigan resident. *Id.* MBZ is a Delaware corporation, headquartered in Atlanta, Georgia.

### C. The Artists have not registered a copyright in the Mural.

MBZ makes no allegations relating to copyright registration in the Mural. In fact, the Mural is not yet registered. [Soto Decl., ¶ 3; Maxx242 Decl., ¶ 3.[5]]

## III. THE COURT LACKS PERSONAL JURISDICTION OVER THE ARTISTS

### A. Legal standard for a FRCP 12(b)(2) analysis.

When challenged, "the plaintiff has the burden of proving the court's jurisdiction over the defendant." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)." *Ford Motor Co. v. Autel US Inc.*, No. 14-13760, 2015 WL 5729067, at *3 (E.D. Mich. Sept. 30, 2015) ("*Ford Motor Co.*"). If a motion for dismissal is properly supported, "the plaintiff may not stand on his pleadings

---

[5] MBZ failed to file the required AO 121 form identifying the copyright at issue in its Complaint. See, Court Docket, ECF entry: "NOTICE of Error directed to: Edward J. DeFranco. Form AO 121 is missing. The filing attorney must file the form found on www.uscourts.gov with the Court to correct the error. . . .(SSch) (Entered: 04/02/2019)." As of the date of this Motion, MBZ has not filed the AO 121 form.

but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 769 (E.D. Mich. 2013) ("*SFS Check, LLC*") (citation omitted).

**B. MBZ cannot establish general jurisdiction over the non-resident Artists.**

Under Michigan law, a court's exercise of jurisdiction can consist of either general jurisdiction. *Ford Motor Co.*, 2015 WL 5729067, at *10. "General jurisdiction exists independently from the facts of the action and may be found where the defendant is present in the state at the time process is served, consents to the state's jurisdiction, or is domiciled in the state." *SFS Check, LLC*, 990 F. Supp. 2d at 770-771 (citing MCL § 600.701). None of these factors exist in this case. The Artists are domiciled in California and accepted service, in California, through their California-based counsel. [Soto Decl., at ¶ 7; Maxx242 Decl. at ¶ 7.] The Artists have not consented to jurisdiction in Michigan. [Soto Decl., at ¶ 6; Maxx242 Decl. at ¶ 6.] Accordingly, the Court lacks general personal jurisdiction over the Artists.

**C. The Court Lacks Specific Jurisdiction over the California-based Artists.**

Different than general "all-purpose" jurisdiction, specific personal jurisdiction "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 920 (2011) (citation omitted). While

Michigan's long-arm statute gives the "maximum scope" of jurisdiction permitted by the due process clause, "defendant's conduct [] must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Eggleston v. Daniels*, No. 15-11893, 2016 WL 4363013, at *11 (E.D. Mich. Aug. 16, 2016) (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014)).

To establish personal jurisdiction over the Artists, MBZ must demonstrate that (1) the Artists "purposefully availed" themselves of the privilege of acting in the forum state; (2) the cause of action arose from the Artist's activities there; and (3) the Artists' acts must have a substantial enough connection with the forum state to make the exercise of jurisdiction over them reasonable." *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) ("*Southern Machine*"). All three factors must be present. *Eggleston v. Daniels*, at *11. Here, MBZ cannot establish any of the necessary factors.

**1. The Artists have not purposefully availed themselves of the privilege of acting in Michigan.**

Purposeful availment is "'the *sine qua non* for *in personam* jurisdiction.'" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (citation omitted); *Interna Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) ("*Interna Corp.*") ("This Court views the purposeful availment prong of the *Southern Machine* test as 'essential' to a finding of personal jurisdiction.") (citation omitted). As this Court has explained, "[p]urposeful availment, the constitutional

touchstone of personal jurisdiction, is present where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 946 F. Supp. 2d 714, 720 (E.D. Mich. 2013) (citation and internal quotation marks omitted). In other words, "[t]he defendant's conduct must be such that he should reasonably anticipate being haled into court." *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). "Random," "fortuitous," or "attenuated" contacts are not enough to "cause a defendant to be haled into a jurisdiction." *CompuServe, Inc.*, 89 F.3d at 1263.

MBZ acknowledges that the Artists are California residents. [Complaint, ¶¶ 6, 12, 13.] MBZ bases personal jurisdiction on the sole allegation that, "events giving rise to the claims occurred in Michigan." [Complaint, at ¶ 15.] The "events" MBZ refers to are MBZ's infringement of the Artists' Mural and the Artists' demands—through their California attorney, to Mercedes's New York attorneys—that MBZ cease and desist its infringing activities. [Complaint at ¶¶ 6, 7, 17, 26.] The Artists' only connection to the forum state—a single visit to Michigan in 2015—does not rise to the level of "purposeful availment."[6]

[6] Mercedes also alleges "on information and belief" that the Artists "regularly do or solicit business in this District." [Complaint at ¶ 16.] Mercedes provides no facts to support this bare allegation. There are none. The Artists have no connection to Michigan other than a single brief visit, and they have not previously or since traveled to the forum state. [Soto Decl., at ¶ 2; Maxx242 Decl., at ¶ 2.]

The Artists' absence of purposeful minimum contacts with Michigan preclude their being haled into court here. The Artists' only contact with Michigan was a four day visit to participate in the "Murals in the Market" art festival. [Soto Decl., ¶ 2; Maxx242 Decl., ¶ 2.] The Artists had no contact with MBZ during their trip to Michigan. [Soto Decl., ¶ 4; Maxx242 Decl., ¶ 4.] Certainly, the Artists could not have anticipated being haled into a Michigan court by a luxury car company claiming the right to appropriate the Artists' Mural for its own commercial use.

**2. MBZ's Declaratory Judgment claims do not arise out of the Artists' Michigan contacts.**

Because MBZ fails to satisfy the purposeful availment prong of the personal jurisdiction challenge, the Court need not even consider the final two prongs necessary to establish personal jurisdiction over the California Artists. See, *Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 523 (6th Cir. 2006). Nevertheless, the remaining elements also support dismissal for lack of personal jurisdiction.

Assuming arguendo the California-based Artists had purposely availed themselves of the privileges of acting in Michigan (and they have not), MBZ's non-infringement claims still fail as they do not "arise from" the Artists' Michigan contacts. "To satisfy the 'arising from' prong of the *Southern Machine* test, the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 506-507 (6th Cir. 2014) ("*Beydoun*") (citing

*Burger King Corp.*, 471 U.S. at 474).

In *Others First, Inc. v. Better Business Bureau of Eastern Missouri and Southern Illinois* ("*Others First*"), the plaintiff sued the defendant corporation alleging tortious interference and defamation arising out of the alleged publication of a defamatory article about plaintiff on defendant's website. *Others First*, No. 14-CV-12066, 2014 WL 6455662 (E.D. Mich. Nov. 17, 2014). The plaintiff alleged that, prior to the publication of the article, defendant's employees contacted Michigan residents to obtain information about the plaintiff. *Id.* at *2. The district court explained that the plaintiff's causes of action were not proximately caused by the defendant's contacts with the forum state because they "do not arise out of any contact the BBB had with the state of Michigan, and, therefore, do not 'arise from' the BBB's contact with the state of Michigan." *Id.* at *9.

Like *Others First*, MBZ's claims here do not "arise from" any activity by the Artists in Michigan. MBZ's claims are even more attenuated than those in *Others First* as the declaratory judgment rulings MBZ seeks have nothing to do with the Artists' creation of the Mural in 2015. Rather, MBZ seeks declaratory judgment of non-infringement on the basis that the Artists' attorney contacted MBZ in 2019 via email and telephone calls to MBZ's representatives located in New York to demand that MBZ stop infringing the Artists' work through social media and other publication of MBZ's advertisements misappropriating the

Artists' Mural. [Complaint, ¶¶ 6, 7; Gluck Decl., ¶ 4.] While the subject of MBZ's infringement is artwork painted in Michigan, the complained of activity—MBZ's misuse of the Artists' work and the Artists' demands that MBZ cease its infringing activity—did not occur in Michigan and had no connection to the Artists' brief trip to Michigan four years ago to participate in the Murals in the Market festival. As such, MBZ's alleged declaratory judgment Complaint, like the plaintiff's claims in *Others First*, does not "arise from" the Artists' one-off contact with Michigan years ago. Therefore, the exercise of jurisdiction over the Artists in Michigan would violate the due process clause.

**3. The exercise of jurisdiction over the Artists in Michigan would be unreasonable.**

Even if the facts were different and MBZ could meet its burden on the first two elements, the Court's exercise of personal jurisdiction over the Artists is unreasonable. "The third prong of the *Southern Machine* test mandates that 'the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *Intera Corp.*, 428 F.3d at 618 (citing *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003)). Courts consider three factors in determining whether the exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief. *Beydoun*, 768 F.3d at 508 (citation omitted).

Here, the Artists would be burdened by having to travel to Michigan to participate in this case. [Soto Decl. at ¶ 8; Maxx242 Decl. at ¶ 8.] Although courts have deemed specific jurisdiction to be proper when a defendant would be compelled to travel, courts recognize the burden to the defendant in having to travel to the forum state when assessing the reasonableness of personal jurisdiction over the defendant. *Intera Corp.*, 428 F.3d at 618; *MLS Nat'l Medical Evaluation Servs., Inc. v. Templin*, 812 F. Supp. 2d 788, 804 (E.D. Mich. 2011. Moreover, there is no identifiable interest specific to this forum at issue here. MBZ has no connection to Michigan; it is a Delaware limited liability company with its headquarters in Atlanta, Georgia. Complaint at ¶ 10.[7] California, in contrast, has a significant interest in safeguarding the Artists' rights, as residents of the state.

## IV. MBZ'S COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO SUPPORT A DECLARATORY JUDGMENT CLAIM

Under FRCP 12(b)(6), a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*"). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555.

---

[7] Although MBZ neglects to identify its corporate domicile in its Complaint, MBZ's headquarters is based in Atlanta, Georgia. [Gluck Decl., ¶ 5, Exh. C.]

**A. MBZ fails to set out a justiciable claim for non-infringement because the Artists' Mural has not yet been registered.**

To establish a viable declaratory judgment claim, a plaintiff must set out a fully-realized dispute that the court can adjudicate. A declaratory judgment must completely resolve "a concrete controversy." *Calderon v. Ashmus*, 523 U.S. 740, 749, 118 S.Ct. 1694, 1699 (1998).

To survive a motion to dismiss for failure to state a claim, a declaratory judgment plaintiff must show not just that a dispute exists between the parties, but that a dispute exists that the Court can adjudicate, i.e. a "justiciable controversy." The declaratory judgment plaintiff must meet all the elements of the underlying claim and show that the threat of litigation is imminent: The question is whether the "facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Polaroid Corp. v. Berkey Photo, Inc.*, 425 F. Supp. 605, 607 (D. Del. 1976).

As the Supreme Court recently affirmed, copyright registration is a prerequisite to pursuing an infringement claim. *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019). If a copyright owner has not registered their copyright, they *may not* pursue litigation to assert their claimed rights. *Id.*, 203 L. Ed. 2 147, 153-14. MBZ fails to show an "imminent threat" of civil liability as the Artists have not registered their copyright in the Mural and

thus *are precluded* from pursuing a copyright infringement claim against MBZ. Under such circumstance, the Complaint must be dismissed for failure to state a claim. *TreadmillDoctor.com, Inc. v. Johnson*, No. 08-2877, 2011 U.S. Dist. LEXIS 34652, at *12-14 (W.D. Tenn. Mar. 31, 2011) ("Although the district court has jurisdiction [to hear a case involving an unregistered copyright], the action is subject to dismissal when a defendant moves to dismiss the action for failure to state a claim."); see, also, *Specific Software Sols., LLC v. Inst. of WorkComp Advisors, LLC*, 615 F. Supp. 2d 708, 716 (M.D. Tenn. 2009).

Because there is no immediate threat of litigation, MBZ is unable to state a justiciable controversy. "In order to satisfy the 'case or controversy' requirement …, 'a party seeking declaratory relief must allege facts to support a likelihood' that it will incur [the alleged liability]." *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 451 (6th Cir. 2004). Where, as here, the deficiency of a declaratory judgment complaint renders the parties' dispute purely hypothetical, the failure to state a claim is a defect that renders the lawsuit unsustainable.

**B.     MBZ fails to state a claim for a declaratory judgment of non-liability based on the "architectural photography exception."**

As a "Third Cause of Action" in its Complaint, MBZ seeks the Court's declaratory judgment that the Artists' Mural is "exempt from protection under the Architectural Works Copyright Protection Act ("AWCPA"), based upon 17 U.S.C. § 120(a)." [Complaint, ¶ 63.] Section 120(a) is a 1990 statute, added to the

Copyright Act as part of the AWCPA, that permits photography and other pictorial representations of works protected by architectural copyrights. MBZ's claim that Section 120 represents a complete defense to Plaintiff's hypothetical copyright infringement claim—because MBZ's photograph depicts part of a building—fails for two principal reasons:

- MBZ fails to allege, other than in nakedly conclusory fashion, that Plaintiffs' Mural is part of a protected "architectural work"—i.e. the design of a building. Section 120(a) does not apply to all structures. To qualify, the work must include some degree of originality, must have been built after 1990, and must be something more than a functional combination of "standard features." Further, as the Federal Circuit found in 2010, structures that humans "access" but do not "occupy" are excluded from copyright protections. MBZ's claim fails because it does not identify an architectural work or make any allegation whatsoever about the nature of the purported work other than the conclusory allegation that the Mural is on a "building."

- Section 120(a) does not immunize infringement of a pictorial, graphical, or sculptural ("PGS") work just because it happens to appear *on* an architectural work. Even if the building were an architectural work, MBZ's Section 120(a) defense would fail because it relies on a fundamental misunderstanding of the AWCPA. As explained below, no court has ever applied Section 120(a) to somehow immunize infringement of a PGS work simply because it appears in the same photograph as an architectural work.[8] Further, the legislative history of the AWCPA compels rejection of MBZ's interpretation.

---

[8] It's easy to see why MBZ wants to allow free commercial use of street art. MBZ is a prolific user of street art and outdoor murals in its advertising. For example, on the *same day* MBZ filed this lawsuit, it posted a four-minute video "brochure" for the MBZ 2019 G-Class featuring a mural by French street artist Astro. [See Gluck Decl., ¶ 3, Exh. B.] It's unclear what criteria MBZ uses to determine when to compensate an artist for their work, as opposed to just appropriating the work without compensation. MBZ is clearly hoping this Court will provide an answer that allows MBZ to argue that all street art is free for MBZ's commercialization.

**1. MBZ fails to allege the existence of an architectural work.**

MBZ's Section 120(a) claim relies, of course, on the premise that the structure on which the Mural appears is a protected architectural work. But inexplicably, MBZ fails to allege any facts in support of this crucial element.

**a. Like all works protected by copyright, an "architectural work" requires some measure of creativity.**

Copyright protection is limited to "original" works. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 ("*Feist*"). Indeed, the first principle of copyright is that only "original" works are protected—and that "originality" requires at least some small measure of creativity. *Id.*, at 346, 349-50. This concept is clearly expressed in the statute that enumerates the kinds works protected by copyright, including architectural work. 17 U.S.C. 102(a) provides that "Copyright protection subsists, in accordance with this title, in ***original*** works of authorship fixed in any tangible medium of expression…"; and lists the eight categories of protectable original works, including "architectural works."

The Supreme Court has made very clear that all copyrightable works must possess some measure of creativity:

> The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), **and that it possesses at least some minimal degree of creativity**. *Feist*, 499 U.S. at 345-46 (emphasis added).

**b. The AWCPA's definition of "architectural work" excludes non-creative design and "standard features."**

As mentioned above, the definition of "architectural works" also explicitly excludes any "standard features" in a building's design, such as "windows, doors, and other staple building components." 37 C.F.R. § 202.11(d)(2). The legislative intent behind this restriction was to avoid impeding the progress of architectural innovation by limiting the scope of copyright protection to those elements of a building's design that reflect the architect's creativity. [H.R. 107-735, at p. 18.]

The legislative history further explains that the AWCPA affords protection only where the architectural work's "design elements are not functionally required":

> A two-step analysis is envisioned. First, an architectural work should be examined to determine whether there are original design elements present, including overall shape and interior architecture. If such design elements are present, a second step is reached to examine whether the design elements are functionally required. If the design elements are not functionally required, the work is protectable without regard to physical or conceptual separability. [H.R. Rep. No. 101-735, at pp. 20, 21.]

**c. The definition of "architectural work" explicitly excludes many utilitarian structures.**

The post-1990 Copyright Act defines an architectural work as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. § 101. It includes "the overall form as well as the arrangement and composition of spaces and elements in

the design, but does not include individual standard features." *Id.*

The administrative regulations supplementing Section 101's definition further define "buildings" (for purposes of Section 120(a)) as "humanly habitable structures that are intended to be both permanent and stationary, such as houses and office buildings, and other permanent and stationary structures designed for human occupancy, including but not limited to churches, museums, gazebos, and garden pavilions." 37 C.F.R. § 202.11(b)(2). The definition excludes "[s]tructures other than buildings, such as bridges, cloverleafs, dams, walkways, tents, recreational vehicles, mobile homes, and boats;" and "standard features, such as windows, doors, and other staple building components." *Id.* § 202.11(d)(1).

The legislative history also sheds light on the outer limits of what can be considered an architectural work. Congress tweaked the definition of "architectural works" while considering the new law. In an early draft of the legislation, an "architectural work" was defined as "the design of a building *or other three-dimensional structure*, as embodied in that building or structure." Congress had intended the phrase "three-dimensional structure" to cover cases where architectural works were embodied in innovative structures that defy easy classification. [H.R. 101-735, at 19, 20.] The phrase was removed, however, out of concern that it could be interpreted as covering structures that are almost purely utilitarian. [*Id.*, at 20.] The committee determined that copyright protection for

such works is not necessary to stimulate creativity or prohibit unauthorized reproduction, and nor was it required in order to comply with the Berne Convention. [*Id.*]

**d. The AWCPA applies only to buildings constructed after 1990.**

Consistent with the legislative intent to provide only as much protection as necessary to comply with Berne, the AWCPA does not protect architectural works published prior to its enactment in December 1990. 37 CFR 202.11(d)(3)(i) ("Works excluded. The following structures, features, or works cannot be registered: [¶] The designs of buildings where the plans or drawings of the building were published before December 1, 1990, or the buildings were constructed or otherwise published before December 1, 1990.")

**e. MBZ fails to identify a building or allege that the building is an architectural work.**

MBZ fails to allege any facts that bear on the elements described above. In other words, MBZ does not allege that the building housing the Mural is an architectural work. For example, MBZ fails to allege: (a) that the building was constructed after 1990, (b) that the building is an original work, possessing some measure of creativity; (c) that the building is not purely utilitarian, and more than a mere collection of stock standard features, or (d) that the building is one that humans occupy. The absence of these necessary allegations requires the dismissal

of MBZ's third cause of action.

**2. Even if the building were an architectural work, Section 120(a) wouldn't immunize infringement of a PGS work simply because it appears thereon.**

MBZ appears to believe that Section 120(a) allows anyone to distribute copies of an otherwise copyrightable PGS work, so long as that work is on a building. In this way, MBZ contends that the AWCPA significantly restricts copyrights in non-architectural works. Indeed, if MBZ's view prevailed, all street art that exists on a building would suddenly be unprotected by copyright. As explained below, both the plain statutory language and the legislative history compel the rejection of this interpretation.

**a. Background of the AWCPA, and its architectural photography exception.**

Prior to 1990, the Copyright Act afforded no protection to architectural works. *Leicester v. Warner Bros.*, 232 F.3d 1212, 1217 (9th Cir. 2000). Buildings were considered "useful articles," like apparel or furniture, which are not protected by copyright. *Id.* But lack of copyright protection for useful articles did not interfere with protection for two-dimensional graphic artwork appearing on or in them (such as graphic design on a tee shirt or a mural on a building), which have always been straightforwardly protected. Indeed, artistic elements on or attached to a useful article can be protected by copyright if they incorporate pictorial, graphic, or sculptural features that "can be identified separately from, and are capable of

existing independently of, the utilitarian aspects of the article." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1008 (2017). Thus, to take a simple and seminal example, even though a lamp is a useful article, a lamp base in the form of a Balinese dancer is copyrightable because one can imagine it existing on its own as a sculptural work. *Mazer v. Stein*, 347 U.S. 201 (1954). In the same way, a painting on a building has always been copyrightable.

On March 1, 1989, the United States joined the Berne Convention for the Protection of Literary and Artistic Works. The Berne Convention required signatory countries to provide copyright protection for "three-dimensional works relative to ... architecture." 1 Nimmer on Copyright, § 2.20, at 2–213 (quoting Berne Convention (Paris text), art. 2(1)). To comply with this treaty obligation, Congress passed the AWCPA. See H.R. Rep. 101–735, at 4-10 (attached as Exhibit E to the Gluck Decl.). The AWCPA added a new category of protected work—*architectural works*—to the seven that already existed in 17 U.S.C. 102. The definition of "architectural work" (explained in detail below) was added to 17 U.S.C. 101 and is supplemented in the Federal Register.

The legislative history of the AWCPA makes clear that its purpose was to do just enough to comply with Berne. H.R. Rep. 101-735, p. 10 ("The implementing legislation [of the Berne Convention] had one simple, but important objective: to make only those changes in U.S. law required to place the United States in

compliance with our treaty obligations.")

Worried that full protection for architectural works (like that afforded to all other categories, such as PGS works) would go too far, and finding that Berne did not require such full protection, Congress enacted a significant limitation on the copyright protection afforded architectural works by adding 17 U.S.C. 120 to the Copyright Act. Section 120(a) provides that the holder of one of these new species of copyrights is not entitled to prevent photography of the architectural work (whereas the holders of all other copyrights may prohibit photos of their work). 17 U.S.C. § 120. The purpose of Section 120 was to take back a little of what the AWCPA gave, new copyright protection for architecture. It did not otherwise interfere with the scope of copyright protection of non-architectural works.

**b. Section 120(a)'s exception limits only the copyrights in architectural works, and not PGS works.**

The statute does not suggest that the copyright in any other works, such as a PGS work on or attached to a building, would be limited in any way. The new law was clearly intended only to expand the scope of protectible works to include new subject matter. There is no indication that anything previously protected by copyright is not still protected. *Davidson v. United States*, 2017 U.S. Claims LEXIS 841 ("the addition of Section 120 was intended to extend copyright protections, however, not truncate them."); see also Jane C. Ginsberg, *Commentary on the Visual Artists Rights Act and the Architectural Works Copyright Protection*

*Act of1990*, 14 COLUM.- VLAJ.L. &ARTs 477,495 (1990) ("if a building contains elements separately protectable as pictorial, graphic or sculptural works (for example, a gargoyle), the unauthorized pictorial representation of that element may be an infringement of the pictorial, graphic or sculptural work (not of the work of architecture)").

**c. The legislative history compels this interpretation.**

That Congress did not intend to alter the protectability of PGS works attached to buildings is confirmed by other express language in the legislative history of the AWCPA. Indeed, the House Report states quite directly that separately protectable PGS works may be "permanently embodied" in architectural works:

> "The Subcommittee was aware that certain works of authorship which may separately qualify for protection as pictorial, graphic, or sculptural works may be permanently embodied in architectural works. Stained glass windows are one such example." H.R. Rep. 101-735, p. 19, fn. 41.

Of such works, the Report makes clear that as long as the architect and artist are different people, each can recover for copyright infringement. Id., at p. 20, fn. 41.

**d. Accordingly, the AWCPA cannot provide MBZ with a defense.**

MBZ's unauthorized use of the Artists' Mural is not immunized by the AWCPA. The Mural is indisputably a straightforward pictorial work that would be registrable separate from the building. The Mural plays no role in the function or

architecture of the building, and is purely ornamental. Indeed, MBZ's allegations about the "functional reasons" behind the Mural's creation—improving the visual appearance of its surroundings and attracting viewers [Complaint ¶ 5]—could apply to nearly all PGS works.

## V. CONCLUSION

For the foregoing reasons, MBZ's Complaint should be dismissed against the Artists for lack of personal jurisdiction and because the Complaint fails to state a claim.

DATED: April 24, 2019

By: /s/ Norman L. Lippitt
LIPPITT, O'KEEFE, GORNBEIN, PLLC
Norman L. Lippitt (P16716)
370 E. Maple Road, Third Floor
Birmingham, MI 48009
248-646-8292
nlippitt@lippittokeefe.com

GLUCK LAW FIRM P.C.
Jeffrey S. Gluck (admission application to be filed) 602 N. Sweetzer Avenue Los Angeles, California 90048
Telephone: 310.776.7413
jeff@gluckip.com

ERIKSON LAW GROUP
David Alden Erikson (admission application to be filed)
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
david@daviderikson.com

*Counsel for Defendants Jeff Soto and Maxx Gramajo*

**Certificate of Service**

I certify that on April 24, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the EFC system which sends notification of such filing to all counsel of record.

/s/ Lisa Kwiecinski
Lisa Kwiecinski
Legal Assistant
Lippitt O'Keefe Gornbein, PLLC
370 E. Maple Road, 3rd Floor
Birmingham, MI 48009
(248) 646-8292
lkwiecinski@lippittokeefe.com