UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MERCEDES BENZ USA LLC,

PLAINTIFF,

-AGAINST-

JEFF SOTO AND MAXX GRAMAJO,

DEFENDANTS.

No.: 2:19-cv-10949

PLAINTIFF MERCEDES BENZ USA LLC'S OPPOSITION TO
DEFENDANTS JEFF SOTO AND MAXX GRAMAJO'S MOTION TO DISMISS

MAY 15, 2019

QUINN EMANUEL URQUHART &
SULLIVAN LLP

Edward DeFranco
Luke Nikas
Maaren A. Shah (admission pending)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel : (212) 849-7000
Fax : (212) 849-7100
eddefranco@quinnemanuel.com
lukenikas@quinnemanuel.com
maarenshah@quinnemanuel.com

MILLER, CANFIELD, PADDOCK & STONE,
PLC

A. Michael Palizzi  (P47262)
Caroline B. Giordano (P76658)
150 West Jefferson, Suite 250
Detroit, Michigan  48226
Tel: (313) 496-7645
Fax: (313) 496-8454
palizzi@millercanfield.com
giordano@millercanfield.com

*Attorneys for Plaintiff Mercedes Benz
USA, LLC*

## TABLE OF CONTENTS

*Page*

COUNTER-STATEMENT OF ISSUES PRESENTED.......................................... ii

CONTROLLING AND MOST APPROPRIATE AUTHORITIES ................................iv

PRELIMINARY STATEMENT .............................................................................1

FACTUAL BACKGROUND ..................................................................................3

ARGUMENT ....................................................................................................5

I.     DEFENDANTS ARE SUBJECT TO JURISDICTION IN MICHIGAN .....................6

II.    THIS DISPUTE IS RIPE FOR ADJUDICATION, EVEN THOUGH
       DEFENDANTS HAVE NOT YET REGISTERED A COPYRIGHT ......................11

III.   MBUSA HAS STATED A CLAIM FOR DECLARATORY JUDGMENT
       REGARDING THE AWCPA .....................................................................15

       A.     The AWCPA Protects MBUSA's Photograph....................................15

       B.     MBUSA Has Stated A Claim for Non-Infringement Under
              Section 120(a).......................................................................22

CONCLUSION................................................................................................25

## COUNTER-STATEMENT OF ISSUES PRESENTED

1.      Are the Defendants subject to personal jurisdiction in Michigan when they claim that (1) MBUSA infringed a mural that Defendants constructed on a Detroit building pursuant to their transaction with a Michigan-based art publisher, (2) MBUSA's allegedly infringing photograph of the mural was taken in Detroit, and (3) the public has no right to take photographs of their Detroit mural?

The correct answer is "yes."

Defendants say "no."

2.      When Defendants have threatened to sue MBUSA for copyright infringement, does a case or controversy exist even though Defendants have not registered their copyright with the United States Copyright Office?

The correct answer is "yes."

Defendants say "no."

3.      Does Section 120(a) of the Copyright Act grant MBUSA the right to photograph publicly visible buildings when the buildings embody pictorial, graphical, or sculptural works as elements in their design?

The correct answer is "yes."

Defendants say "no."

4.     Does Section 120(a) apply to publicly visible buildings, regardless of whether they are protected by copyright law, contain standard or utilitarian features, are actually occupied by humans, or were built after 1990?

The correct answer is "yes."

Defendants say "no."

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Issue 1: Personal Jurisdiction

- *Duncanson v. Wine & Canvas Dev., LLC*, 2015 WL 12838359 (M.D. Fla. June 24, 2015)

Issue 2: Case or Controversy

- *Severe Records, LLC v. Rich*, 658 F.3d 571 (6th Cir. 2011)

- *Otter Prods., LLC v. Stage Two Nine, LLC*, 2019 WL 570642 (D. Colo. Jan. 15, 2019)

- *Archie Comic Publ'ns, Inc. v. DeCarlo*, 2001 WL 946496 (S.D.N.Y. Aug. 21, 2001).

- *Bhl Boresight, Inc. v. Geo-Steering Sols., Inc.*, 2017 WL 1177966 (S.D. Tex. Mar. 29, 2017)

- *Telebrands Corp. v. Exceptional Prods, Inc.*, 2011 WL 6029402 (D.N.J. Dec. 5, 2011)

- *Corwin v. Quinonez*, 858 F. Supp. 2d 903 (N.D. Oh. Mar. 12, 2012)

Issue 3: Applicability of Section 120(a) to Pictorial, Graphical, or Sculptural Works Embodied in Buildings

- *Leicester v. Warner Brothers*, 232 F.3d 1212 (9th Cir. 2000)

- 17 U.S.C. § 120

- 17 U.S.C. § 101

- 17 U.S.C. § 113

Issue 4: Applicability of Section 120(a) to All Publicly Visible Buildings

- *Leicester v. Warner Brothers*, 232 F.3d 1212 (9th Cir. 2000)

- 17 U.S.C. § 120

# TABLE OF AUTHORITIES

*Page*

## CASES

*AlixPartners, LLP v. Brewington*,
  836 F.3d 543 (6th Cir. 2016) ...................................................................5

*Archie Comic Publ'ns, Inc. v. DeCarlo*,
  2001 WL 946496 (S.D.N.Y. Aug. 21, 2001) ........................................13

*Assured Source ASO, LLC v. J.K. Scaime Const., Co., Inc.*,
  2008 WL 4104468 (E.D. Mich. Sept. 4, 2008) .....................................5

*Bhl Boresight, Inc. v. Geo-Steering Sols., Inc.*,
  2017 WL 1177966 (S.D. Tex. Mar. 29, 2017) .....................................13

*Bird v. Parsons*,
  289 F.3d 865 (6th Cir. 2002) .............................................................5, 9

*Bridgeport Music, Inc. v. Still N The Water Pub.*,
  327 F.3d 472 (6th Cir. 2003) ................................................................7

*Commodities Exp. Co. v. Detroit Int'l Bridge Co.*,
  695 F.3d 518 (6th Cir. 2012) ..............................................................12

*CompuServe, Inc. v. Patterson*,
  89 F.3d 1257 (6th Cir. 1996) ................................................................5

*Conceivex, Inc. v. Rinovum Women's Health, Inc.*,
  2017 WL 3484497 (E.D. Mich. Aug. 15, 2017) .................................11

*Corwin v. Quinonez*,
  858 F. Supp. 2d 903 (N.D. Oh. Mar. 12, 2012) .................................13

*Davidson v. U.S.*,
  2017 WL 3033774 (Ct. Fed. Cl. Jul. 18, 2017) .............................. 15, 16

*Duncanson v. Wine & Canvas Dev., LLC*,
  2015 WL 12838359 (M.D. Fla. June 24, 2015) .............................8, 10

*Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991) .............................................................................23

*Ford Motor Co. v. Launch Tech Co. Ltd.*,
   2018 WL 1089276 (E.D. Mich. Feb. 26, 2018) ......................................... 7, 9, 10

*Fourth Estate Publishing Ben. Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019) ......................................................................................14

*Gaylord v. U.S.*,
   595 F.3d 1364, 1381 (Fed. Cir. 2010) ...............................................................25

*IMAPizza, LLC v. At Pizza Ltd.*,
   334 F. Supp. 3d 95 (D.D.C. 2018)......................................................................25

*Kmart Corp. v. Key Indus., Inc.*,
   877 F. Supp. 1048 (E.D. Mich. 1994) ..............................................................8, 9

*Leapers, Inc. v. First Quality Distrib., Inc.*,
   2012 WL 1714938 (E.D. Mich. May 15, 2012)....................................... 6, 7, 9, 10

*Leicester v. Warner Brothers*,
   232 F.3d 1212 (9th Cir. 2000)................................. 16, 17, 18, 19, 20, 21, 24, 25

*Major v. Sony Music Ent., Inc.*,
   1992 WL 210115 (S.D.N.Y. 1992) ....................................................................19

*Mazer v. Stein*, 347 U.S. 201 (1954).......................................................................19

*Michigan Dessert Corp. v. Baldwin Richardson Foods, Inc.*,
   2007 WL 851001 (E.D. Mich. Mar. 15, 2007)......................................................6

*Others First, Inc. v. Better Business Bureau of E. Mi and S. Ill., is entirely*,
   2014 WL 6455662 (E.D. Mich. Nov. 17, 2014) ..................................................10

*Otter Prods., LLC v. Stage Two Nine, LLC*,
   2019 WL 570642 (D. Colo. Jan. 15, 2019), *report and recommendation*
   *adopted*, 2019 WL 568477 (Feb. 12, 2019) .................................................. 13, 14

*R.M.S. Titanic, Inc. v. Haver*,
   171 F.3d 943 (4th Cir. 1999)..............................................................................21

*Reed Elsevier, Inc. v. Muchnick*,
   559 U.S. 154 (2010) ..........................................................................................15

*Scott v. Ambani,*
    577 F.3d 642 (6th Cir. 2009) ..................................................................12

*Severe Records, LLC v. Rich,*
    658 F.3d 571 (6th Cir. 2011) ..............................................................5, 12

*Sony/ATV Music Pub. LLC v. D.J. Miller Distrib., Inc.,*
    2010 WL 3872802 (M.D. Tenn. Sept. 28, 2010) .................................14

*Specific Software Sols., LLC v. Inst. Of WorkComp Advisors, LLC,*
    615 F. Supp. 708 (M.D. Tenn. 2009) ...................................................14

*Star Athletica, L.L.C. v. Varsity Brands, Inc.,*
    137 S. Ct. 1002 (2017) .........................................................................19

*Steele v. Burek,*
    2014 WL 6612386 (E.D. Mich. Nov. 20, 2014) .................................7, 9

*Telebrands Corp. v. Exceptional Prods., Inc.,*
    2011 WL 6029402 (D.N.J. Dec. 5, 2011) ............................................13

*TreadmillDoctor.com, Inc. v. Johnson,*
    2011 WL 1256601 (W.D. Tenn. Mar. 31, 2011) .................................14

## STATUTES

17 U.S.C. § 101 .............................................................................. 16, 23

17 U.S.C. § 102(a) ...............................................................................23

17 U.S.C. § 113(c) .......................................................................... 18, 20

17 U.S.C. § 120(a) .............................................. 1, 2, 15, 16, 17, 20, 21, 22, 23, 24

17 U.S.C. § 411(a) ...............................................................................14

## REGULATIONS

37 CFR § 202.11 ..................................................................................24

## LEGISLATIVE MATERIALS

H.R. Rep. 101-735 ...............................................................................21

Plaintiff Mercedes Benz, USA LLC ("MBUSA") respectfully submits this brief opposing Jeff Soto and Maxx Gramajo's ("Defendants") motion to dismiss.

## PRELIMINARY STATEMENT

This action is about whether a photograph of a streetscape in downtown Detroit infringes the intellectual property rights of graffiti artists whose mural on one of the buildings is partially depicted in the photograph.  It is not about whether car manufacturers are good or bad or whether graffiti artists have or should have intellectual property rights.  It is simply a case about whether a specific photograph infringes a mural painted on a building.  MBUSA filed this lawsuit because its photograph does not infringe Defendants' rights, and MBUSA is entitled to declaratory relief to resolve Defendants' accusations to the contrary.

In January 2018, MBUSA obtained a permit to photograph various locations around downtown Detroit.  MBUSA took photographs of its Mercedes G 500 series vehicle in the permitted locations and then posted six of those photographs on its Instagram account.  One photograph partially depicts a mural Defendants painted on a publicly visible Detroit building.  Section 120(a) of the Architectural Works Copyright Protection Act ("AWCPA") protects the right to photograph publicly visible buildings, including artwork that is part of the buildings.  Nonetheless, Defendants are looking for a windfall:  they threatened to "expose" MBUSA, use litigation and discovery to pool a class of "victims," and then present to a jury a

1

damages figure of $80 million if MBUSA did not meet their demands.  MBUSA was forced to sue to resolve these baseless assertions.  Defendants now move to dismiss.

*First*, Defendants argue that Section 120(a) does not apply.  They argue that no one, including MBUSA, is allowed to photograph a publicly visible building if graffiti art has been painted on the building.  That is not the law.  Section 120(a) expressly contradicts Defendants' position.

Defendants cannot dispute the plain language of Section 120(a).  Instead, they argue that it would be unjust to apply the law this way.  It is not.  Copyright law is not "all or nothing."  Section 120(a) protects just one category of reproductions from infringement claims: photographs of publicly visible buildings.  Other categories of reproductions, such as t-shirts, posters, or prints depicting an image of the mural, would remain protected.  Those types of use are not at issue.  Defendants' attempt to import into Section 120(a) several purported "requirements" that are nowhere to be found in that provision—including that the building be original and constructed after 1990—must also be rejected.  Those requirements are the elements for a *building* to be *protected* by copyright; Section 120(a), by its plain terms, does not protect buildings—it permits photography of publicly visible buildings.

*Second*, Defendants argue that MBUSA cannot pursue this case because Defendants have not registered their copyright.  This is wrong:  the law is well-settled that a declaratory judgment claim is proper when a defendant threatens suit

2

for copyright infringement.  The threat of litigation creates a case or controversy, regardless of whether a copyright is registered.

*Finally*, Defendants argue that they are not subject to personal jurisdiction in Michigan because they do not live here.  But that is not the test.  Defendants traveled to Michigan, spent nearly a week in Detroit painting a 24-foot mural on a Detroit market building (which is now a permanent fixture on the Detroit cityscape), and then sold copies of their work in Detroit.  Defendants assert that MBUSA's photograph—which was taken in Detroit—violates their copyright.  Defendants have repeatedly and purposefully availed themselves of the privileges of acting in Michigan.  They are therefore subject to personal jurisdiction in this Court.

The Court should deny Defendants' motion to dismiss.

## FACTUAL BACKGROUND

MBUSA sells and distributes vehicles, including the G 500 Series vehicle (the "G 500").  Compl. ¶ 2.  In January 2018, MBUSA attended the North American International Auto Show in Detroit, Michigan, to unveil the G 500, then its newest model luxury SUV.  *See id.* ¶¶ 2, 19.  During that time, MBUSA obtained a permit from the City of Detroit to photograph the G 500 in specific downtown areas.  *Id.* ¶ 22.  That permit authorized MBUSA to photograph its G 500 in several locations, including between the Eastern Market and 1314 Gratiot Avenue, *id.*, where Defendants' mural (the "Mural") is located, *see* Soto Decl. ¶ 2 & Gramajo Decl. ¶ 2.

MBUSA commissioned photographs of its G 500 throughout the city of Detroit. On January 28, 2018, MBUSA posted six of those photos on an Instagram account, @mercedesbenz. *See* Compl. ¶¶ 3-4. Among them was a picture depicting the G 500 driving in front of the Gratiot Central Market (the "Building"). The photo partially depicted Defendants' Mural in the background. *See* Compl. ¶ 24. The post stated, "[t]his off-road legend is always ready for some urban exploration to mix things up" and was designed to highlight the G 500's versatility. *See id.* ¶ 4.

Defendants created the Mural in 2015 during the first year of the now annual art festival, Murals in the Market. *See id.* ¶ 40. The festival aimed to revitalize the Eastern Market district of Detroit and turn it "into a must-see destination for arts, as well as food…." *Id.* ¶¶ 41-42, 46. Defendants' Mural was painted on the façade of a market building, was integrated into that building, and became a permanent fixture of the Eastern Market's cityscape. *Id.* ¶ 64; *see also* ¶¶ 46-46, 48, 65, 66.

Over a year after MBUSA posted the picture, Defendants hired an attorney who "threatened to file a copyright infringement lawsuit against MBUSA based on MBUSA's depiction of the … mural." Br. at 5 (quoting Compl. ¶ 6). As a courtesy, and consistent with MBUSA's respect for artists and the arts, MBUSA removed the photograph from Instagram. Compl. ¶ 6. But Defendants continued to make threats, expressing a "desire to 'expose' MBUSA, use formal discovery to learn information other people can use to sue MBUSA, and tell a jury that MBUSA made $80 million

selling the G series truck in an effort to wipe out MBUSA's revenue from sales of the G Series." *Id.* ¶ 7. Defendants' threats had nothing to do with vindicating artists' rights—this was a transparent threat to file a lawsuit and attempt to destroy MBUSA's reputation if MBUSA did not succumb to the lawyer's offensive demand. Shortly after, MBUSA filed this action to declare its rights. *Id.* ¶ 1.

### ARGUMENT

On a motion to dismiss, the complaint must be "construe[d] … in a light most favorable to the plaintiff," with all of the factual allegations accepted as true. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). A motion to dismiss must be denied if the Complaint "'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Severe Records, LLC v. Rich*, 658 F.3d 571, 578 (6th Cir. 2011). With respect to a Rule 12(b)(2) motion to dismiss for lack of jurisdiction, "the plaintiff's burden is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016); *Bird*, 289 F.3d at 871. Where a jurisdictional motion is decided in the absence of an "evidentiary hearing, the court must consider the pleadings and affidavits in the light most favorable to the plaintiff." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996); *Assured Source ASO, LLC v. J.K. Scaime Const., Co., Inc.*, 2008 WL 4104468, at *2 (E.D. Mich. Sept. 4, 2008) (Cohn, J.).

## I.    DEFENDANTS ARE SUBJECT TO JURISDICTION IN MICHIGAN

Defendants claim that they are not subject to personal jurisdiction in Michigan because "they live and work in Los Angeles."  Br. at 2.  This is a non-sequitur. Defendants purposefully availed themselves of this forum by spending nearly a week in Detroit to create a permanent fixture on Detroit's cityscape—the very work that is at issue in this lawsuit—and by attempting to preclude MBUSA from using a photograph it had taken of the Mural in Detroit.  The core events and art at issue— the Mural and the allegedly infringing photograph—were created in person in this jurisdiction.  Personal jurisdiction clearly exists over the Defendants.

Because Michigan's long-arm statute "bestow[s] the broadest possible grant of personal jurisdiction consistent with due process," the Court need "only determine whether assertion of personal jurisdiction over the defendant violates the Due Process Clause." *Leapers, Inc. v. First Quality Distrib., Inc.*, 2012 WL 1714938, at *4 (E.D. Mich. May 15, 2012); *Michigan Dessert Corp. v. Baldwin Richardson Foods, Inc.*, 2007 WL 851001, at *3 (E.D. Mich. Mar. 15, 2007) (Cohn, J.) (same). This is a three-pronged inquiry: (1) the defendant "must purposefully avail himself of the privilege of acting in the forum state or causing a consequence" there; (2) "the cause of action must arise from the defendant's activities there;" and (3) the "acts of the defendant or consequences caused by defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the

defendant reasonable." *Steele v. Burek*, 2014 WL 6612386, at *8 (E.D. Mich. Nov. 20, 2014). Courts do not "apply [these criteria] mechanically;" the inquiry "turns on the facts of the individual case at hand." *Id.* When the first two prongs are met, "'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteria.'" *Leapers*, 2012 WL 1714938, at *8. Here, all three prongs are satisfied.

*First,* Defendants have availed themselves of the privilege of acting in the state by (1) creating the Mural at issue in Detroit and (2) attempting to block MBUSA from using the photograph it took of the Detroit landscape. Purposeful availment merely requires that Defendants "take[] actions that are intentionally directed toward Michigan." *Ford Motor Co. v. Launch Tech Co. Ltd.*, 2018 WL 1089276, at *8 (E.D. Mich. Feb. 26, 2018); *see also Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003) (purposeful availment requires that "the defendant has engaged in 'some overt actions connecting the defendant with the forum'"). Defendants inaccurately claim that "only [one] contact with Michigan" is insufficient. Br. at 8. "Even a single act by a defendant directed toward Michigan that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process." *Ford Motor*, 2018 WL 1089276, at *5. And there's much more than that here.

Defendants both admit that they traveled to Michigan in September 2015 and

spent nearly a week in Detroit creating and erecting a large-scale mural onto a building in the Eastern Market District of Detroit.  Gramajo Decl. ¶ 2; Soto Decl. ¶ 2.  In doing so, Defendants transacted with a Michigan-based art publisher to create the mural as part of a Michigan-based art festival intended to "attract tourism" to the Detroit market, *see id.* & Compl. ¶¶ 5, 37, 40-52, as well as a Michigan-based building where the Mural was erected, *see* Compl. ¶ 24.  While present in the state, Defendants also engaged in numerous sales of prints of two paintings.  *See* Gramajo Decl. ¶ 2; Soto Decl. ¶ 2.  Defendants engaged in multiple acts that were intentionally directed toward the state of Michigan and engaged in transactions within the state of Michigan and with people in Michigan.[1]  Defendants' purposeful availment did not stop with creation of the Mural; Defendants continue to assert rights over the Mural and take actions to prevent others from photographing the building in Detroit on which the Mural resides.  *See* Compl. ¶¶ 6-7, 26.

These are not "random," "fortuitous, or "attenuated" contacts with Michigan, as Defendants suggest.  Br. at 9.  In *Duncanson v. Wine & Canvas Dev., LLC*, an Indiana-based artist created a painting in Florida, which plaintiff alleged infringed her work and sued in Florida for copyright infringement.  2015 WL 12838359, at *2,

---

[1]  Michigan's long-arm statute reaches even "the slightest act of business in Michigan."  *Kmart Corp. v. Key Indus., Inc.*, 877 F. Supp. 1048, 1051-52 (E.D. Mich. 1994) ("'[T]he "transaction of any business within the state'… is very broad … and comprehends even the 'slightest' business transaction.").

11-12 (M.D. Fla. June 24, 2015). The Court found that the artist purposefully availed herself of the forum by traveling to Florida to paint the work at issue and should have "reasonably anticipate[ed] being haled into Florida Courts" concerning it. *See id.* The exercise of jurisdiction was reasonable given that the "purposeful journey to Florida" was "related to the litigation." *Id.* Defendants have purposefully availed themselves of the privileges of acting in Michigan in the same way.

*Second,* the claims at issue here arise out of Defendants' contacts with Michigan. "[T]he Sixth Circuit has 'characterized this standard as a 'lenient standard.'" *Steele*, 2014 WL 6612386, at *10. All that is required is that "defendant's contacts with the forum state are related to the operative facts of the controversy." *Bird*, 289 F.3d at 875; *see also Ford Motor*, 2018 WL 1089276, at *8. Put another way, "the 'arising out of' requirement is satisfied if the cause of action was 'made possible by' or 'lies in the wake of' the defendant's contacts with the forum." *Kmart*, 877 F.Supp. at 1051-52. Defendants are incorrect that MBUSA's action has "nothing to do with the Artists' creation of the Mural." Br. at 11. But for Defendants' participation in a Detroit art festival and their creation of a permanent public artwork on Detroit's cityscape, this dispute would not have arisen. *Leapers*, 2012 WL 1714938, at *7-8. There is undoubtedly a substantial connection between Defendants' creation of the Mural in Detroit and their threat of litigation against MBUSA for taking an allegedly infringing picture of that Mural in Detroit. *See*

*Duncanson*, 2015 WL 12838359, at *20-21 (jurisdiction reasonable where copyright infringement claims based on defendant's "purposeful trips to [the forum] and the actions that he undertook" therein contributing to creation of the painting at issue).[2] Defendants emphasize that they hired a California-based lawyer to direct these threats of litigation at New York-based attorneys of MBUSA.   Br. at 9.   This argument is irrelevant:  the U.S. Constitution does not premise personal jurisdiction on the office addresses of the lawyers who handle a case.

*Third,* because MBUSA has established that Defendants have purposefully availed themselves of the privilege of acting within Michigan and the claims at issue arise out of those actions, the exercise of jurisdiction is presumed to be reasonable, and "only the unusual case will not meet" this prong.  *Leapers,* 2012 WL 1714938, at *8; *Ford Motor*, 2018 WL 1089276, at *8 (defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" where first two prongs met).  Defendants' generalized claim of travel

---

[2]   Defendants' reliance, Br. at 11, on *Others First, Inc. v. Better Business Bureau of E. Mi and S. Ill.*, is entirely misplaced.  There, defendant BBB was the one who had posted an alleged defamatory article about Others First on a website targeted toward customers in Illinois.  2014 WL 6455662, at *1-2, 9 (E.D. Mich. Nov. 17, 2014).  Moreover, the Court focused on BBB's contacts with Michigan and whether the communications between BBB and a representative of Others First (in Michigan) gave rise to Others First's cause of action for tortious interference and defamation (it rightly did not).  *Id.* at 9.  Here, the inquiry is not the adequacy of MBUSA's contacts with the forum; it is whether Defendants have sufficient contacts.  They clearly do.

expenses, Br. at 13, does not constitute the "unusual case." *See Conceivex, Inc. v. Rinovum Women's Health, Inc.*, 2017 WL 3484497, at *5 (E.D. Mich. Aug. 15, 2017). Further, both Defendants are jointly represented by Michigan attorneys, who are also representing two other defendants in similar cases, and those other defendants have *not* challenged the Court's ability to exercise personal jurisdiction. *Id.* This will make the Michigan forum an efficient place to resolve this case.

Finally, Defendants' claim that Michigan has "no identifiable interest" in this dispute is meritless. Br. at 13. The essence of Defendants' infringement claim is that neither MBUSA, nor anyone in Detroit, can photograph a mural (or even the area around a mural if the mural is partially captured in the photograph) that exists on a publicly visible building in downtown Detroit. Michigan has a superior interest in deciding the public's right to photograph publicly visible buildings in Detroit. *See Conceivex*, 2017 WL 3484497, at *5 (where action related to "intellectual property located in Michigan, no other place would be a more appropriate forum to afford an efficient resolution of the conflict").

## II.   THIS DISPUTE IS RIPE FOR ADJUDICATION, EVEN THOUGH DEFENDANTS HAVE NOT YET REGISTERED A COPYRIGHT

Defendants contend that MBUSA may not seek declaratory relief unless and until Defendants decide to register their copyright. Br. at 14-15. Yet, multiple courts have already addressed this issue and squarely rejected Defendants' position.

A declaratory judgment action is proper when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 525 (6th Cir. 2012). When the alleged facts "demonstrate that the defendant *could* file a coercive action arising under federal law," the court's jurisdiction is properly invoked. *Severe Records*, 658 F.3d at 581. This test is readily satisfied where defendants threaten to sue for copyright infringement. *See id.* The Complaint alleges that Defendants made adverse and hostile claims against MBUSA based on their claimed rights in the Mural and threatened to harass MBUSA with litigation and use formal litigation discovery to "expose" MBUSA. Compl. ¶¶ 6-7. Specifically, Defendants threatened to "tell a jury that MBUSA made $80 million selling the G series truck in an effort to wipe out MBUSA's revenue from sales of the G Series" in attempt to extract a shakedown payment from MBUSA.[3] *Id.* Under the well-established standard for declaratory relief, the Complaint states a ripe claim.

---

[3]   Defendants continue, even now, to hurl new, unfounded claims of infringement against MBUSA, claiming that MBUSA's alleged infringement is on an even greater scale than alleged by Defendants and purportedly extends to "infringing photos well beyond the single Instagram post." Br. at 4 n. 4. The Court should strike these references, which are improper on a motion to dismiss. *See Scott v. Ambani*, 577 F.3d 642 (6th Cir. 2009). Even considering them, however, they further underscore why this action is necessary. For the same reasons, the Court should disregard Defendants' decontextualized reference to a video that includes a mural of a French artist that has nothing to do with this litigation or Defendants. Br. at 16 n. 8.

Defendants respond that there can be no case or controversy unless they decide to register their copyright. Br. at 15. They do not acknowledge or disclose to the Court that the overwhelming weight of authority holds otherwise. The widely accepted rule is that a case or controversy is not "purely hypothetical," Br. at 15, in the absence of a copyright registration when, as here, Defendants have threatened to sue for copyright infringement. *See Otter Prods., LLC v. Stage Two Nine, LLC*, 2019 WL 570642, at *6-7 (D. Colo. Jan. 15, 2019), *report and recommendation adopted*, 2019 WL 568477 (Feb. 12, 2019) (rejecting argument that lack of registration precludes a declaratory judgment action for non-infringement); *Archie Comic Publ'ns, Inc. v. DeCarlo*, 2001 WL 946496, at *1 (S.D.N.Y. Aug. 21, 2001) (same); *Bhl Boresight, Inc. v. Geo-Steering Sols., Inc.*, 2017 WL 1177966, at *3-4 (S.D. Tex. Mar. 29, 2017) (same); *Telebrands Corp. v. Exceptional Prods., Inc.*, 2011 WL 6029402, at *3 (D.N.J. Dec. 5, 2011) (same); *Corwin v. Quinonez*, 858 F. Supp. 2d 903, 908-09 (N.D. Oh. Mar. 12, 2012) (same). What matters is that the threat of suit hangs over MBUSA's head. MBUSA need not wait on pins and needles, in a cloud of uncertainty and amid threats of escalating damages, to see if Defendants will decide to register their copyright and sue. There are good reasons for this: to preclude a declaratory judgment suit until the copyright holder decides to register the copyright "would improperly skew the balance between copyright holders and others," allowing a copyright owner to "create a cloud over the use or

creation of work by declining to register a copyright but yet threatening a potential infringer with legal action." *Otter Prods.*, 2019 WL 570642, at \*7.  Such a result "would de facto divest the potential infringer of any legal recourse"—the very thing the Declaratory Judgment Act is meant to prevent.  *See id.*

Defendants' citation to the Supreme Court's recent decision in *Fourth Estate Publishing Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019), does not compel a different result.  That case does not address an action seeking a declaration of non-infringement.  *Id.* at 881.  It holds only that Section 411(a) typically "bars a copyright owner from suing for infringement 'until registration … has been made.'" *Id.* at 888.[4]  But even then, registration is only "akin to an administrative exhaustion requirement that the *owner* must satisfy before suing."  *Id.* at 887 (emphasis added).[5] More importantly, almost a decade ago, the Supreme Court observed that

---

[4]   Defendants' claim also lacks any statutory basis, as the Copyright Act only provides that a copyright owner cannot sue for infringement in the absence of a registration.  *See* 17 U.S.C. § 411(a).  *See, e.g., Otter Prods.*, 2019 WL 570642, at \*7 (statute requiring registration refers expressly to "'civil action *for infringement*, not any civil action'") (emphasis supplied).

[5]   Defendants' citation, Br. at 15, to *TreadmillDoctor.com, Inc. v. Johnson*, 2011 WL 1256601, at \*1-3 (W.D. Tenn. Mar. 31, 2011) is inapposite because that decision addresses an infringement action, not a declaratory judgment action.  Likewise, *Specific Software Sols., LLC v. Inst. Of WorkComp Advisors, LLC*, 615 F. Supp. 708, 716 (M.D. Tenn. 2009), is a  singular outlier that goes against the weight of authority and has been criticized for wrongly deciding that registration is a jurisdictional prerequisite, which *Reed Elsevier* abrogated.  *See Sony/ATV Music Pub. LLC v. D.J. Miller Distrib., Inc.*, 2010 WL 3872802, at \*4 (M.D. Tenn. Sept. 28, 2010) (*Reed Elsevier* abrogated *Specific Software's* holding).

registration is a condition that owners "ordinarily must satisfy before filing an infringement claim." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157-58 (2010). Yet, in the years since *Reed Elsevier*, the precedent has become well-established that the absence of a registration does *not* preclude an accused infringer from seeking a declaration of non-infringement. *See supra* at 14. Accordingly, *Fourth Estate* does not alter the well-established precedent that a copyright registration is not a prerequisite to a declaratory judgment action.

## III.   MBUSA HAS STATED A CLAIM FOR DECLARATORY JUDGMENT REGARDING THE AWCPA

MBUSA has properly stated a claim enforcing its rights under Section 120(a) of the AWCPA. That statute establishes an important right of the public to take pictures of buildings that are publicly visible, free from any claim of copyright infringement. This statute applies squarely here.

### A.   The AWCPA Protects MBUSA's Photograph

Defendants first argue that Section 120(a) does not apply to protect MBUSA's photo because the Mural is a pictorial, graphical, or sculptural ("PGS") work. Br. at 23. The statute by its plain terms, however, provides absolute protection for photos of buildings, regardless of whether those buildings embody PGS works as elements in their design.[6]  17 U.S.C. § 120(a). Under the express terms of Section 120(a), any

---

[6]  While Defendants cite *Davidson v. United States* for the proposition that Section 120 "was intended to extend copyright protection," Br. at 23, *Davidson* cites no

copyright in a constructed architectural work "does not include the right to prevent the making, distributing, or public display of … pictorial representations of the work, if the building in which the work is embodied is located in or ordinarily visible from a public place." *Id.* The term "architectural work" encompasses "the design of a building," which "includes the overall form as well as the arrangement and composition of spaces and elements in the design." 17 U.S.C. § 101. The provision is absolute; there are no carve-outs for design elements that are also PGS works.

The very authority Defendants rely on and identify as "controlling," Br. at iv & 21, rejects Defendants' position. In *Leicester v. Warner Brothers*, 232 F.3d 1212, 1219 (9th Cir. 2000), the Ninth Circuit held that Section 120(a) "allows the public the right to photograph public buildings including" any work that is "part of the architectural work." This is because the term "architectural work" extends to "the overall form as well as the arrangement and composition of spaces and elements in the design of the building." *Id.* at 1218 (citing 17 U.S.C. § 101). In *Leicester*, the

---

authority for that conclusion and it is contrary to the text of Section 120, which plainly "truncates," not "extends," copyright protection. *Compare Davidson v. U.S.*, 2017 WL 3033774, at *2 (Ct. Fed. Cl. Jul. 18, 2017). Moreover, *Davidson* misapplies *Leicester*, finding that the sculpture at issue had "independent protection" as a sculptural work that "pre-existed the addition of Section 120," *id.* at *3, where *Leicester* holds that PGS works are "covered as an 'arrangement and composition of spaces and elements' in the building's design" and thus their copyright cannot serve as the basis for an infringement claim where Section 120(a) is implicated. 232 F.3d at 1218. In any event, *Davidson* is distinguishable because the Statute of Liberty replica there was not even "connected to the buildings" and merely existed "on the same plot of land." 2017 WL 3033774, at *2.

creator of the "Zanja Madre" towers—a series of sculptures along the courtyard of the 801 Building—sued filmmakers for copyright infringement for depicting the 801 Building, including the towers. *Id.* at 1214. The court rejected the plaintiff's claim, finding that the towers, though a PGS work, were part of an architectural work as elements in the 801 Building's design. *Id.* at 1217-18. Thus, the film's depiction of the building (including its PGS design elements) was therefore protected. *Id.*

Defendants argue that applying Section 120(a) is unjust because it would allow "anyone to distribute copies of an otherwise copyrightable PGS work," thus wiping out *all* copyright protection for street art murals. Br. at 21. Defendants assert this position because the actual language of the statute does not support them. Regardless, this theoretical argument misapprehends copyright law as "all or nothing." Indeed, the court in *Leicester* rejected the same argument, *see Leicester*, at 1219-20, that application of Section 120(a) to PGS works would eviscerate all copyright protection for that work, Br. at 21. The copyright in a PGS work and the public's right to photograph a building in which a PGS work is embodied are not mutually exclusive. *Leicester*, at 1219-20. As the court observed, "whether or not [plaintiff] may have some *other* claim for a *different* infringement of his copyright in the Zanja Madre towers as a sculptural work, we believe he has none for a pictorial representation of the 801 Tower and its streetwall embodying a protected architectural work." *Id.* at 1219. Thus, the court recognized that the plaintiff might

have an infringement claim where, for example, someone created a reproduction of his sculpture divorced from the context of the building in which it was embodied; but he had no infringement claim based on a photograph of the building that included the sculpture as a design element of the building. *See id.* The same is true here: Defendants might have an infringement claim if MBUSA were to, for example, reproduce a wholesale image of the Mural, divorced from the context of the Building in which it is embodied, on a t-shirt, postcard, or poster. That is not what happened here. Defendants cannot prevent MBUSA from photographing the Building on which the Mural is an integral design element.

Defendants only reinforce this point by attempting to analogize buildings to useful articles (*e.g.*, furniture), claiming that the "lack of copyright protection for useful articles did not interfere with the protection for two-dimensional graphical artwork appearing on or in them" and that "the holders of all other copyrights may prohibit photos of their work." Br. at 21, 23. Defendants ignore, however, that Section 113(c) similarly permits photos of useful articles, even if they embody a PGS work: "copyright does not include any right to prevent the making, distribution, or display of pictures or photographs of [a work lawfully reproduced in useful articles] in connection with advertisements or commentaries related to the distribution of such articles." *See* 17 U.S.C. § 113(c). Thus, in Defendants' example of "a Balinese dancer" lamp base, Br. at 22, the public may photograph that lamp

base under certain conditions—despite the fact that its creator retains copyright protection in the sculpture—precisely *because* the sculpture is embodied in a useful article. This is so because the law recognizes a countervailing public benefit to photograph useful articles that trumps the creator's copyright. For that reason, Defendants' citation to *Mazer v. Stein*, which predated Section 113(c), is inapposite. "*Mazer* focused on the *copyrightability* of works of art that are incorporated into useful articles." *See Major v. Sony Music Ent., Inc.*, 1992 WL 210115, at *3 (S.D.N.Y. 1992) (finding photo of VHS tape cover protected, though cover included a PGS work, because tape covers are useful articles and Section 113 applied). That "the photograph … is separable from the useful article [and] copyrightable" does not alter that analysis. *Id.* Defendants' analogy therefore undercuts them; "separability" has no impact on the public's right to photograph PGS works embodied in useful articles, *see id.*, and likewise has no impact on the public's right to photograph PGS works embodied in architectural works. *See Leicester*, 232 F.3d at 1219.

Defendants' reliance on the Supreme Court's decision in *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017), is similarly misplaced. That decision also concerns design elements of useful articles, not buildings, and stands only for the proposition that design elements of a useful article can be PGS works protected by copyright. *See id.* at 1012. It does not address the public's right to photograph

19

useful articles that include the PGS works as design elements under Section 113(c)—
let alone the public's right to photograph buildings under Section 120(a).

Defendants next argue that the legislative history of the AWCPA reveals that
"Congress did not intend to alter the protectability of PGS works." Br. 24. This
ignores that the legislative intent and history *support* application of Section 120(a)
here. Defendants also ignore the fact that courts have rejected such arguments.

*First*, the court in *Leicester* already rejected Defendants' interpretation of a
lone footnote in the House Report as "counterintuitive." *Compare* Br. at 24 (citing
Gluck Aff. Ex. E at 19, fn. 41) *with* 232 F.3d at 1219-20. The footnote actually
makes clear that Congress acknowledged that PGS works could be "permanently
embodied in architectural works," which *supports* the application of Section 120(a)
to such works because it shows Congress intended for the term "architectural works"
to cover PGS design elements embodied within them. *See* Gluck Aff. Ex. E at 19,
fn. 41; *see also supra* at 21-22. Moreover, it does not concern Section 120(a), which
the Report discusses later; it only supports the right of the architect and artist of the
PGS work to separately recover where the alleged infringement does *not* take the
form of a photograph of a publicly visible building. *See* Gluck Aff. Ex. E at 19, fn.
41 As the court in *Leicester* found, this footnote cannot be read to "suppose that
Congress meant to restrict pictorial copying to some, but not all of, a unitary

20

architectural work," particularly because "[o]therwise, [Section 120(a)'s] exemption for [photos] of buildings would make no sense." *See* 232 F.3d at 1219-20.

*Second*, public policy concerns articulated in the Report show an intent for Section 120(a) to apply as broadly as its plain terms. Congress observed that "[a]rchitecture plays a central role in our daily lives, not only as a form of shelter or as investment, but also as a work of art. It is an art form that performs a very public, social purpose." *See* 232 F.3d at 1217 (quoting H.R. Report 101-735, at 12 (*see* Gluck Aff. Ex. E at 12)). The House Report further explained that "[a]rchitecture is a public art form and is enjoyed as such. Millions of people visit our cities every year and take back home photographs, posters, and other pictorial representations of prominent works of architecture as a memory of their trip." *Id.* (quoting H.R. Report 101-735 at 22 (*see* Gluck Aff. Ex. E at 12)). Notably, the Report's examples include those used commercially, such as posters, not just photos for personal use.

Moreover, as noted in *Leicester*, Section 120(a) "reflected a shift from the prior regime of relying on 'ad hoc determinations' of fair use." *Id.* (citing H.R. Rep. 101-735 at 21-22 (*see* Gluck Aff. Ex. E. at 21-22)). The statute was meant to relieve the public of fact-intensive fair use assessments by providing clarity and certainty with an absolute right of photography. *Id.* at 1217-20. Indeed, placement of art within public view is inconsistent with a claim to exclusive ownership. *See R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 970 (4th Cir. 1999) ("Exclusive viewing and

21

photographing of property is usually achieved by exercising exclusive possession and removing the property to a private or controllable location where it cannot be viewed or photographed except under conditions controlled by the owner. But a property right does not normally include the right to exclude viewing and photographing of the property when it is located in a public place.").

Congress recognized that buildings play a "central role in our daily lives" because of their public nature, and when this "art form" is made publicly visible for all to see, it should be "enjoyed as such" to permit its "very public, social purpose" to be fully realized.  Gluck Ex. E. at 12, 22.  The Court should reject Defendants' effort to exclude the Building here from the clear statutory language, which accurately carried out the legislature's intent.

### B.    MBUSA Has Stated A Claim for Non-Infringement Under Section 120(a)

Defendants advance a litany of other arguments in an attempt to hold MBUSA to pleading requirements that are nowhere to be found in Section 120(a).  *First*, Defendants incorrectly argue that MBUSA must allege the Building is "original" and "protected by copyright." Br. at 17.  This makes no sense.  Section 120(a) allows photography of architectural works regardless of whether they are protected by copyright and does not contain any requirement of protectability.  "Originality" is not included within the definition of "architectural work" as used in Section 120(a).

*See* 17 U.S.C. § 101.[7]  The only requirement of originality is found within Section 102(a), which defines the scope of copyrightable matter as "original works of authorship;" but this section does not limit Section 120(a)'s right to photograph publicly visible buildings.  *See* 17 U.S.C. § 102(a).

*Second*, Defendants argue that MBUSA must plead the Building is not "utilitarian" and includes more than "standard features."  Br. at 18-19.  Again, Defendants cite no authority holding that Section 120(a) requires that the Building be protected under copyright law.  In any event, it is self-evident that the Building consists of more than just standard features, which Defendants say, Br. at 19, are "windows, doors, and other staple building components."  *See* Compl. ¶ 24. Defendants also claim that "utilitarian structures" are excluded from Section 120(a), but fail to explain what this means or the legal basis for that claim.  *See*  Br. at 18-19.  To the extent this argument refers to Defendants' reference to objects such as "bridges, cloverleafs, dams, walkways, tents, recreational vehicles, mobile homes, and boats," it is clear that the Building is none of these things.  *See* Compl. ¶ 24.

*Third*, Defendants obliquely suggest that Section 120(a) is inapplicable to buildings constructed before December 1, 1990.  *See* Br. at 20.   Defendants argue

---

[7]  In any event, as Defendants acknowledge, the standard for originality is exceedingly low, as a building must only possess "some minimal degree of creativity."  *Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) (cited at Br. at 17).  That standard is met here.  *See* Compl. ¶ 24.

that "the AWCPA *does not protect* architectural works published prior to …

December 1, 1990." Br. at 20 (emphasis added) (citing 37 CFR § 202.11(d)(3)(i)).[8]

But the regulation that Defendants rely on provides only that buildings constructed

before December 1, 1990 "cannot be registered" for copyright protection.  37 CFR

§ 202.11(d)(3)(i).  That is not an issue in this case.  The relevant statute here, Section

120(a), is not about the *protection* of architectural works; it concerns the right to

photograph publicly visible buildings, a right Defendants cite absolutely no authority

to undermine.   In fact, the House Report upon which Defendants rely further

confirms that the 1990 limitation applies only to the term of "protection" for

architectural works, not to photographs of buildings.  Gluck Ex. E at 24-25.[9]

*Fourth*, Defendants argue that MBUSA must plead that humans actually

occupy the Building, Br. at iii, 20, but cite no authority for this purported

requirement, *see id.*  The regulation Defendants cite requires only that buildings be

"humanly habitable structures,"—*i.e.*, structures that are *capable* of habitation.  Br.

at 19 (quoting 37 CFR § 202.11(b)(2)).  Section 120(a) extends to buildings that are

capable of being occupied, even if they are not actually inhabited.  *See Leicester*,

---

[8]  Defendants effectively admit that photos of pre-1990 buildings are protected in saying, Br. at 2, that Congress wanted to avoid turning "every tourist at Fisher Building into an infringer."   The Fisher Building was built in 1928. https://thefisherbuilding.com/.

[9]  At any rate, MBUSA could allege that the Building was constructed after 1990 since, on information and belief, public records demonstrate that the original building was destroyed by fire in 1995 and then the current Building was constructed.

232 F.3d at 1218 ("'building' includes structures 'that are used, but not inhabited'").

Here, the photo in the Complaint shows that the Building is occupied by Gratiot Central Market.  *See* Compl. ¶ 24.  Having pled that the Building is occupied as a market, MBUSA has sufficiently pled the existence of a building capable of occupation and use by humans.  *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 118–19 (D.D.C. 2018) (a pizza restaurant is an architectural work).[10]

### CONCLUSION

MBUSA respectfully requests that the motion to dismiss be denied.

DATED : MAY 15, 2019

QUINN EMANUEL URQUHART & SULLIVAN LLP
Edward DeFranco
Luke Nikas
Maaren A. Shah (admission pending)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel : (212) 849-7000
Fax : (212) 849-7100
eddefranco@quinnemanuel.com
lukenikas@quinnemanuel.com
maarenshah@quinnemanuel.com

RESPECTFULLY SUBMITTED,

MILLER, CANFIELD, PADDOCK & STONE, PLC

BY: */s/ A. Michael Palizzi*
A. Michael Palizzi  (P47262)
Caroline B. Giordano  (P76658)
150 West Jefferson, Suite 250
Detroit, Michigan  48226
Tel: (313) 496-7645
Fax: (313) 496-8454
palizzi@millercanfield.com
giordano@millercanfield.com

*Attorneys for Plaintiff MBUSA*

---

[10]  Defendants claim that the "Federal Circuit found in 2010 [that] structures that humans 'access' but not 'occupy' are excluded."  Br. at 16.  MBUSA is aware of no such authority.  Defendants' only cited decision, Br. at iv, holds no such thing.  *See Gaylord v. U.S.*, 595 F.3d 1364, 1369-70, 1381 (Fed. Cir. 2010) (collection of "19 stainless steel statutes representing a platoon of foot soldiers in formation" was not a building).

## LOCAL RULE 7.1 CERTIFICATION

I, A. Michael Palizzi, hereby certify that this document, Plaintiff MBUSA's Brief in Opposition to Defendants Jeff Soto and Maxx Gramajo's Motion to Dismiss complies with Local Rule 5.1(a) in that: it is double spaced (with the exception of quoted materials and footnotes); contains one inch margins on the top, sides, and bottom; is consecutively paginated; and its text size and footnotes are 14 point font, as it is a proportional font.  It is also the appropriate length for responsive briefs: 25 pages.  *See* Local Rule 7.1(d)(3).

MILLER, CANFIELD, PADDOCK & STONE, PLC

By:  /s/ A. Michael Palizzi
     A. Michael Palizzi

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.


MILLER, CANFIELD, PADDOCK & STONE, PLC

By:  /s/ A. Michael Palizzi
     A. Michael Palizzi