**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| MERCEDES BENZ USA LLC, | 2:19-CV-10949-AC-EAS |
| | Honorable Avern Cohn |
| Plaintiff, | District Court Judge |
| v. | Honorable Elizabeth A. Stafford |
| | Magistrate Judge |
| JEFF SOTO AND MAXX GRAMAJO, | |
| Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(1) and (6)** |

# TABLE OF CONTENTS

I.   MBZ HAS NOT MADE A PRIMA FACIE SHOWING THAT THE ARTISTS ARE SUBJECT TO PERSONAL JURISDICTION ...................... 1

   A. In declaratory relief actions, the specific jurisdiction analysis focuses exclusively on the defendant's enforcement activities .............................. 1

   B. There is simply no support for the idea—which MBZ characterizes as self-evident—that facts relating to the underlying work or its exploitation are relevant to personal jurisdiction. ....................................................... 3

      1. MBZ's marquee *Duncanson* case offers it no support. ...................... 5

      2. MBZ bases its jurisdictional analysis on a mischaracterization of the evidence ................................................................................................ 6

   C. MBZ has not met its burden to make a showing of personal jurisdiction. 6

II.  MBZ FAILS TO ALLEGE A JUSTICIABLE CONTROVERSY ................. 7

III. MBZ MISUNDERSTANDS SECTION 120 .................................................. 7

   A. The plain statutory language shows the Artists are correct that Section 120(a) limits only the new species of architectural copyrights. ................. 8

   B. The statutory scheme supports the Artists' interpretation of Section 120(a). ........................................................................................................ 9

   C. The *Leicester* case supports the Artists' interpretation. ......................... 10

   D. The legislative history supports the Artists' interpretation. .................... 13

    E.  MBZ's argument that public art is not protected by copyright is wrong. 13

    F.  Section 120(a) does not exempt MBZ's use of the Mural. ...................... 14

IV.    MBZ MAKES A NUMBER OF MISCHARACTERIZATIONS ................ 15

Case 2:19-cv-10949-AC-EAS   ECF No. 17   filed 05/29/19   PageID.222   Page 3 of 19

Nothing in MBZ's Opposition alters the Artists' analysis.

## I. MBZ HAS NOT MADE A PRIMA FACIE SHOWING THAT THE ARTISTS ARE SUBJECT TO PERSONAL JURISDICTION

According to MBZ, the Artists are subject to personal jurisdiction because they travelled to this district to paint the Mural. [Opp. at 3.] This argument reflects a fundamental misunderstanding of how minimum contacts are assessed in declaratory relief actions. Such claims generally arise out of some threat by the defendant to sue the plaintiff. In evaluating minimum contacts, *courts look to where such threats were sent, received and felt—and not to facts related to the underlying controversy*. In intellectual property actions, this means that courts look to enforcement activities to determine personal jurisdiction—and certainly not to the location of the work in question or where it was created/exploited.

### A. In declaratory relief actions, the specific jurisdiction analysis focuses exclusively on the defendant's enforcement activities

The parties agree that the familiar minimum contacts analysis applies in declaratory relief actions. What MBZ fails to acknowledge is that in intellectual property cases, the test is whether the defendant purposefully directed his *enforcement* activities to the forum. See *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077-78 (10th Cir. 2008). In *Dudnikov*, the defendant copyright holder was subject to personal jurisdiction in Colorado because it sent

1

infringement notices to eBay, knowing this would halt the infringer's auction originating there. The court's rigorous discussion of personal jurisdiction was confined to the defendant's enforcement activities, and did not consider where the works were created, kept, or exploited. *Id* at 1082.

The Federal Circuit (affirming a Tennessee district court) explicitly made this same point—that courts look only to intellectual property enforcement activities in evaluating minimum contacts—in the patent context:

> A declaratory judgment claim arises out of the patentee's contacts with the forum state only if those contacts relate in some material way to the enforcement or the defense of the patent. Accordingly, in this context the minimum contacts prong requires some enforcement activity in the forum state by the patentee. [*Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc*. 909 F.3d 1134, 1138 (Fed.Cir. 2018) (citing *Avocent Huntsville Corp. v. Aten Int'l Co*., 552 F.3d 1324, 1336 (Fed. Cir. 2008)).]

The trial court made the same holding, also relying on the seminal *Avocent* case. *Maxchief Invs., Ltd. v. Wok & Pan, Ind., Inc.*, 2017 WL 6601921, at *5 (E.D. Tenn. Sept. 29, 2017), *aff'd*, 909 F.3d 1134 (Fed. Cir. 2018). Another district court in this circuit explained that an action seeking a declaration of non-infringement:

> [N]either directly arises out of nor relates to the . . . offering to sell . . . of arguably infringing products in the forum. Because the claim arises not from commercialization but from the activities of the defendant in enforcing the relevant patent suit, the relevant inquiry becomes the extent to which a defendant purposefully directed enforcement activities at residents of the forum. [*Power Sys. v. Hygenic Corp*., 2014 WL 2865811, at *6 (E.D. Tenn. June 24, 2014) (internal quotations and citations omitted).]

*See also*, *Want2Scrap, LLC v. Larsen*, 2018 WL 1762853, at *8 (N.D. Ind. Apr. 9,

2

2018) ("The contacts relevant to personal jurisdiction for a claim of declaratory judgment of [copyright] non-infringement are based on the defendant's conduct that gives rise to the plaintiff's claim, specifically the defendant's enforcement activity, not its business activity."); *Marlin Firearms, Co. v. Wild West Guns, LLC*, 2013 WL 2405510, at *4-5 (D. Conn. May 31, 2013) (same, trademark); *Rolling Thunder, LLC v. Indian Motorcycle Int'l*, 2007 WL 2327590, at *3 (D. Utah Aug. 10, 2007) (same, trademark).

**B.     There is simply no support for the idea—which MBZ characterizes as self-evident—that facts relating to the underlying work or its exploitation are relevant to personal jurisdiction.**

MBZ argues that the Artists have an obvious connection to Michigan: they painted the Mural here. [Opp. at 3.] Even if this were a fleeting contact, it is a sufficient basis for personal jurisdiction, MBZ argues, because this action centers around the Mural. [Id. at 6.] In this regard, MBZ argues that even a tenuous connection is sufficient under the extremely "lenient" applicable test. [Id. at 9.] But the cases MBZ relies on for this point (found on pages 6 and 7 of the Opposition) are mostly straightforward infringement cases—not declaratory relief actions. And the few declaratory relief cases are cited for uncontroversial generalities.

In this way, MBZ simply ignores what kinds of forum contacts are relevant to the personal jurisdiction inquiry in the declaratory relief context. Indeed, the other side of the coin of the doctrine discussed above—that courts assess minimum

3

contacts in declaratory relief actions only with regard to enforcement activities—is that commercial acts (such as exploitation of intellectual property) within the forum are immaterial.

A declaratory judgment claim for non-infringement "neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit." *United Bully Kennel Club v. Am. Bully Kennel Club*, 2011 WL 13228570, at *10 (S.D. Fla. 2011);[1] *Am. Intercontinental Univ., Inc. v. Am. Univ.*, 2017 WL 3478805, at *1 (N.D. Ill. Aug. 14, 2017). "Simply put, where defendant sells the copyrighted product is not relevant to the existence of plaintiff's declaratory judgment cause of action on copyright infringement, nor to the question of whether the court has specific, personal jurisdiction over the defendant." *Coastal Video Communications, Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562 (E.D. Va. 1999). *See also*, *GSI Lumonics, Inc. v. Biodiscovery, Inc.*, 112 F.Supp.2d 99, 107 (D. Mass. 2000) (declaratory claim "for non-infringement of a copyright or a patent cannot,

---

[1] *United Bully,* an action seeking a declaration of non-infringement of *copyright*, borrowed freely from patent cases because "the due process considerations of a declaratory judgment for trademark infringement or copyright infringement are similar to the due process considerations of a declaratory judgment for patent infringement." 2011 WL 13228570 at *9.

without more, be said to 'arise out of' the commercial distribution of the patented or copyrighted articles within a state.")

MBZ also argues that Michigan courts have a special interest in adjudicating this controversy because the Mural is a "permanent fixture" of Detroit. [Opp. at 7, 11.] But of course, the Mural could be whitewashed any time, without affecting the copyright. Indeed, because a copyright is an intangible, incorporeal right, it has no situs apart from the domicile of the proprietor. 3 Nimmer on Copyright § 12.01 (2019); *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 607 (S.D.N.Y. 2016).

### 1. MBZ's marquee *Duncanson* case offers it no support.

As discussed above, MBZ cites a number of cases for general principles regarding personal jurisdiction. It also offers one case for its specific thesis that travelling to a state to paint an artwork is enough to subject the artist to personal jurisdiction in a case related to that artwork. [Opp. at pp. 8-9, citing *Duncanson v. Wine & Canvas Dev., LLC*, 2015 WL 12838359 *2 (M.D. Fla. June 24, 2015).] MBZ fails to mention that *Duncanson* is not a district court opinion, but rather a magistrate's recommendation. *Id.* at *2. MBZ also mischaracterizes the facts in *Duncanson*: the defendant it describes as "an Indiana-based artist [who] created a painting in Florida," was in fact the owner of an multi-state art school, who travelled to Florida on numerous occasions to visit her company's franchisees and operate the business—including by teaching a class on how to paint the plaintiff's

5

artwork. *Id.*, at *13, 14.

More important, *Duncanson* is once again not a declaratory judgment case at all, but rather merely a garden variety copyright infringement case. *Id.* at *6, 7. Accordingly, it is hardly surprising that the magistrate focused on the defendant's commercial activities rather than her enforcement activities.

    **2.    MBZ bases its jurisdictional analysis on a mischaracterization of the evidence.**

Even though facts relating to the Artists' creation and commercial exploitation of the Mural are immaterial, as explained above, it's worth noting that MBZ grossly mischaracterizes those facts. Citing to ¶ 2 of the Artists' declarations, MBZ asserts that the Artists "engaged in numerous sales of prints of two paintings" while in Michigan. [Opp. at 8.] But the declarations say no such thing. The Artists declare (at ¶ 5, which is probably what MBZ *meant* to cite) only that a third party sold prints. [Gramajo Decl. ¶ 5; Soto Decl. ¶ 5.] The Artists say nothing about selling prints themselves or participating in any way; and nothing about sales taking place while they were in Michigan.

**C.    MBZ has not met its burden to make a showing of personal jurisdiction.**

In response to the Artists' 12(b)(2) motion to dismiss, MBZ failed to present any facts about how the Artist's copyright enforcement activities relate to Michigan. Nor did MBZ make any such allegations in its Complaint. MBZ did not request jurisdictional discovery. Accordingly, they make no prima facie showing.

6

As a result, the Artists' motion to dismiss should be granted.

## II.  MBZ FAILS TO ALLEGE A JUSTICIABLE CONTROVERSY

MBZ argues that the "great weight of authority holds" that a declaratory relief action for non-infringement is ripe for adjudication even prior to registration of the copyright. But the one published case MBZ cites is not a non-infringement action at all, but rather a dispute between co-authors. Further, each of MBZ's three unpublished district court cases reject a *jurisdictional* challenge to a pre-registration declaratory relief action, which became untenable after *Reed*. But the Artists do not challenge subject matter jurisdiction. Rather, as explained in their motion to dismiss, they argue that MBZ has *failed to state a claim* for a declaratory relief, for the simple reason that they do not face an imminent legal action. [Motion at 14, 15.] Notably, MBZ avoids the leading case on this issue, in which the Eleventh Circuit explains this distinction. *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1341 (11th Cir. 2018).

## III.  MBZ MISUNDERSTANDS SECTION 120

The Artists move to dismiss MBZ's third cause of action for a judicial declaration that "the mural is exempt from protection under the Architectural Works Copyright Protection Act, based upon the terms of 17 U.S.C. § 120(a)." [Complaint ¶ 63.] The Artists argue that (1) MBZ failed to allege that the building on which the Mural appears is an "architectural work," and (2) even if the building

7

was an architectural work, it does not follow that photographs of pictorial, graphic, and sculptural ("PGS") works appearing thereon are "exempt from protection."

MBZ's response is disarmingly simple. It argues Section 120(a) allows photography of buildings. Period. If this interpretation of Section 120(a) is correct, it would hardly matter that MBZ failed to properly allege the existence of an architectural work. And if such protection were as absolute as MBZ claims, the inclusion of PGS works in the exemption would require no additional analysis.

MBZ's interpretation can make sense at first glance. Why would something need to be copyrighted, in order to be exempt from copyright? But as explained below, the exemption applies only to protected architectural works because the public has always been, and remains, free to photograph all other buildings, which are uncopyrightable useful objects. Without Section 120(a), the new species of "architectural copyright" would make an infringer of anyone snapping pictures in the vicinity of a new building. Section 120(a) merely preserves the right to photograph post-1990 buildings despite their new copyright protection.

A.  **The plain statutory language shows the Artists are correct that Section 120(a) limits only the new species of architectural copyrights.**

MBZ suggests that the Artists avoid the plain language of the statute. But that language states unequivocally that it applies only to copyrighted "architectural works." Section 120(a) reads, in pertinent part:

> **The copyright in an architectural work** that has been constructed

8

does not include the right to prevent the making… of photographs of the work…. (emphasis added).

It's hard to imagine language that more clearly contradicts MBZ's claim that Section 120(a) was enacted to allow photography of all buildings. The statute says only that a **"copyright in an architectural work"** shall be limited, in that **such a copyright** cannot be used to prevent photography of that building. The statute says nothing about non-copyrighted buildings, or non-architectural copyrights.

No one has ever suggested that the propriety of photographing pre-1990 buildings, or useful objects in general, carried with it the right to reproduce graphic or sculptural works that appear on buildings (or on other useful objects such as clothes or furniture). Indeed, courts have developed a rigorous jurisprudence to determine when a PGS work is separable from a useful object that it appears on or in, and thus protected by copyright. *See, e.g., Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002 (2017). Nothing in the AWCPA suggests that it was meant to alter this calculus, for either pre- or post-1990 buildings.

**B.    The statutory scheme supports the Artists' interpretation of Section 120(a).**

Besides the plain language of Section 120(a), context shows that its sole function is to limit copyrights in architectural works. For one thing, the title of Section 120(a) is "Scope of exclusive rights in architectural works." That Section 120(a) is part of the AWCPA also supports the idea that it limits only the new

9

copyrights created thereunder. If Congress wished to allow photography of buildings generally, it would not have done so as part of, and within, legislation creating new copyrights for post-1990 original buildings.

**C.     The *Leicester* case supports the Artists' interpretation.**

Both sides appear to agree that *Leicester* is a key case. MBZ quotes language on page 1219 of *Leicester,* that Section 120(a) "'allows the public the right to photograph public buildings' including any work that is 'part of the architectural work.'" [Opposition, p. 16.] But this quotation is not the holding of the case. First, it is a cobbling together of various phrases on page 1219. Second, it is a recitation of the defendant's position—not that of the court. Indeed, although MBZ neglected to include an ellipsis, the quoted sentence continues to also describe the plaintiff's contrary position: "… unless, as Leicester contends, the 1990 amendments specifically provide for the continued separate protection of sculptural works attached to buildings." *Leicester*, 232 F.3d at 1219.

Even if these were the court's words, MBZ glosses over the key phrase "part of the architecture," to which the court devoted considerable attention. As explained below, quite a lot is required in order for a PGS work to be "part of" architecture (such as that it be planned along with the building, match its look and materials, and perform architectural functions).

The true "holding" of *Leicester* supports the Artists. To explain, some

10

discussion of Leicester's confusing three-way split is required. The question that divided the judges (and which arises here) was whether Section 120(a) allowed reproduction and use of PGS work in or on a building. Judge Tashima's (concurring) view was similar to MBZ's here: that Section 120(a)'s permission to photograph a building trumped the copyright protections of PGS works embodied therein. *Leicester v. Warner Bros.*, 232 F.3d 1212, at 1222 (9th Cir. 2000). Judge Fisher's dissent offered a muscular argument for the contrary position (similar to the Artists' view here) that Section 120(a) limits only copyrights in architectural works, and does not affect the copyright in PGS works that appear in a photograph of a building. *Id.*, at 1225-1236.

Judge Rymer's majority opinion obviously agreed with the concurrence in its result (no infringement because Section 120(a) applied), *but it agreed with the dissent that a PGS work on a building was generally still protected*. The majority opinion found that that Section 120(a) applied *only as a matter fact*—because the purported sculptural work was part and parcel of the architecture.[2] There was no

---

[2] Given the extraordinary degree of integration of the plaintiff's purported "sculptural work" into the building's architecture, *Leicester* shows just how rare it will be that a purportedly independent work will be "part of" a building's architecture. This was no mere sculpture. Rather it was a courtyard, garden, public space, and fountain—all contained by large walls that included decorative three-story high towers. Many of the particulars of the "sculpture" were mandated by architectural codes imposed by a development agency, and the work was planned

11

separate PGS work according to Judge Rymer, just an architectural work with sculptural elements—to which Section 120(a) would obviously apply. Under this approach, Judge Rymer (like the dissent) would protect a PGS work that was *not* simply "part of" the architecture. Judge Tashima wrote a concurrence precisely because he disagreed with the majority (and dissent) on this point.[3]

*Leicester* offers MBZ no get-out-of-jail-free card because no one would suggest that the Artists' Mural here is really just an aspect of the building's architecture. See *Falkner v. Gen. Motors LLC*, 2018 WL 5905820, at *5 (C.D. Cal. Sept. 17, 2018) ("All three judges on the [*Leicester*] panel unambiguously agreed that, for Section 120(a) to apply to a PGS work …, the PGS work must be 'part of' an architectural work.") MBZ has not pled such integration, and its (accurate) description and photographs of the Mural disclose that it could not be plausibly pled. Accordingly, if MBZ wants to argue that it did not infringe because advertisers need the right to photograph urban streetscapes, it will have to rely on the fair use doctrine, which has long served this purpose.

---

and built along with the building, matching its look and materials. *Leicester*, 232 F.3d at 1214, 1219.

[3] Further, not only was Judge Tashima alone in his reasoning, he stopped well short of endorsing the absolutist proposition that MBZ attributes to him (and inexplicably to the case itself). He did this by qualifying his argument as applying "at least" where the PGS work is a "functionally part of the architectural work." *Id*. at 1222 (emphasis added).

### D. The legislative history supports the Artists' interpretation.

As described in the Artists' Motion, the legislative history of the AWCPA explains that it was enacted to do no more than required to comply with U.S. obligations in joining Berne, which mandated protection for architecture. Berne did not require absolute freedom to photograph buildings—and in fact Congress had to carefully study whether limiting architectural copyrights to allow photography was consistent with the required protections. See House Report 101-735, p 22.

MBZ cites to portions of legislative history that emphasize the cultural importance of photography of buildings. [Opp. at 21.] But these excerpts support the Artist's interpretation—as a reason to avoid going overboard in protecting architecture via copyright. Again, these comments came within the context of creating architectural copyrights for the first time. More important, the legislative history states in no uncertain terms that Section 120(a) applies only to architectural works and is meant to limit the copyright in those works: "[The AWCPA] creates a new section 120(a)…, limiting the exclusive rights in architectural works." [H.R., p. 21]. In other words, Section 120(a) simply took back a little of what the AWCPA gave.

### E. MBZ's argument that public art is not protected by copyright is wrong.

If more evidence were needed that MBZ is bending copyright law to suit its purposes, it is provided by its absurd assertion that "Indeed, placement of art

13

within public view is inconsistent with a claim to exclusive ownership." [Opp. at 21.] This could not possibly be true: Artworks in museums, galleries, and public square are fully protected by copyright. The lone case MBZ offers in support has nothing to do with copyright law. Rather, *R.MS. Titanic, Inc. v. Haver* involved *salvage law*, which gives "salvors" certain rights in recovered artifacts, based on ancient uncodified international law. 171 F.3d 943, 970 (4th Cir. 1999).

### F.     Section 120(a) does not exempt MBZ's use of the Mural.

Section 120(a) has no application to this case, at least as it is currently pled. By its plain language, all Section 120(a) provides is that *the copyright in a building* (a new concept) shall not prevent photography of that building. It says nothing about the copyright in PGS works on a building, like the Mural. Accordingly, PGS works are protected as they always have been.

The Artists do not contend that "no one… is allowed to photograph a publicly visible building if graffiti art has been painted on the building." Under well-established law, most of such photography (including cityscapes and street scenes) will qualify as fair uses. MBZ does indeed bring a claim for non-infringement under the fair use doctrine, and notably, *the Artists do not challenge that claim because it has the virtue of coherence.* A court will eventually decide whether MBZ's advertising photograph, which appears to feature the Mural as its centerpiece, constitutes a fair use—but MBZ cannot escape copyright liability

without an analysis by pretending that all photographs of buildings are permitted. Because Section 120(a) could not act as a defense, the Court should dismiss MBZ's third cause of action.

### IV. MBZ MAKES A NUMBER OF MISCHARACTERIZATIONS

The Artists also address the following mischaracterizations by MBZ.

- MBZ characterizes the Artists as disputing MBZ's (and the public's) right to photograph the Mural. But what the Artists object to, of course, is the use of the Mural in MBZ's advertising.

- MBZ takes the Artists to task for making a "non-sequitur" argument: "Defendants claim that they are not subject to personal jurisdiction in Michigan because 'they live and work in Los Angeles.'" [Opp. at 6.] But of course, the Artists never make such argument.

- MBZ emphasizes that it "obtained a permit to photograph" and photographed only "in the permitted locations." What MBZ means, but might not be readily apparent, is only that it obtained a simple permit from the city to do outdoor photography in certain areas. No one would suggest this somehow amounted to permission to use the Mural.

- MBZ alleges that the Artists have demanded $80 million for use of the murals. In due course, this will be shown to be false.

Respectfully submitted,

Dated: May 29, 2019

By: s/ David Erikson

| ERIKSON LAW GROUP | GLUCK LAW FIRM P.C. | LIPPITT, O'KEEFE, GORNBEIN, PLLC |
|---|---|---|
| David Alden Erikson | Jeffrey S. Gluck | Norman L. Lippitt (P16716) |
| 200 N. Larchmont Blvd. | 602 N. Sweetzer Ave. | 370 E. Maple Rd., 3d Fl |
| Los Angeles, CA 90004 | Los Angeles, CA 90048 | Birmingham, MI 48009 |
| 323.465.3100 | 310.776.7413 | 248.646.8292 |
| david@daviderikson.com | jeff@gluckip.com | nlippitt@lippittokeefe.com |

*Counsel for Defendants Jeff Soto and Maxx Gramajo*

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2019, I electronically filed the foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(1) and (6) with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

                        By:    /s/ *David Alden Erikson*
                                David Alden Erikson
                                200 North Larchmont Boulevard
                                Los Angeles, California 90004
                                Telephone: 323.465.3100
                                david@daviderikson.com